# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA AND THE STATE OF CALIFORNIA, *ex rel.* KIMBERLY HERMAN, AMY LESTAGE, and KEVIN ROSEFF, <br><br> Plaintiffs, <br><br> vs. <br><br> COLOPLAST A/S, COLOPLAST CORP., HOLLISTER INC., 180 MEDICAL, INC., A-MED HEALTH CARE CNETER, BYRAM HEALTHCARE CENTERS, INC., CCS MEDICAL, INC., LIBERATOR MEDICAL SUPPLY, INC., RGH ENTERPRISES, INC. d/b/a EDGEPARK MEDICAL SUPPLIES, and SHIELD CALIFORNIA HEALTH CARE CENTER, INC., <br><br> Defendants. | CIVIL ACTION NO. 11-cv-12131 RWZ |

## MOTION TO DISMISS OF SHIELD CALIFORNIA HEALTH CARE CENTER INC. AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

<u>**TABLE OF CONTENTS**</u>                                                       <u>**Page**</u>

MOTION ..................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................2

   I.     INTRODUCTION ................................................................................2

   II.    THE PROCEDURAL FACTS ..............................................................4

        A.     The California FCA Action .......................................................4

        B.     The Massachusetts FCA Action ................................................6

   III.   THE FEDERAL FCA PUBLIC DISCLOSURE BAR
        REQUIRES DISMISSAL OF THE RELATORS'
        MASSACHUSETTS ACTION .............................................................8

        A.     A Motion Under Fed.R.Civ.P. 12(b)(6) is Appropriate for
               Resolving the Public Disclosure Bar Issue .................................8

        B.     The Federal Public Disclosure Bar ............................................9

        C.     At a Minimum, the Allegations Regarding the Violations
               of the Medi-Cal Upper Billing Limit Were Publicly
               Disclosed When the First Amended Complaint Was
               Unsealed in the California Action.............................................10

        D.     The Relators Do Not Meet the Original Source
               Requirements With Respect to the Allegations
               Concerning the Medi-Cal Upper Billing Limit .........................16

   IV.   THE CALIFORNIA FCA PUBLIC DISCLOSURE BAR AND
        OTHER STATE LAW REQUIREMENTS SEPARATELY
        PROHIBIT RELATORS FROM MAINTAINING THIS
        ACTION ON BEHALF OF THE STATE OF CALIFORNIA ..........19

   V.    CONCLUSION .................................................................................20

MOTION TO DISMISS OF SHIELD CALIFORNIA HEALTH CARE CENTER INC.

<u>**TABLE OF AUTHORITIES**</u>                                    <u>Page(s)</u>

**Federal Cases**

*United States ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.*,
764 F. 3d 699 (7th Cir. 2014) ...................................................................8

*U.S. ex rel. Ambrosecchia v. Paddock Laboratories*,
2015 WL 5605281 (E.D. Mo. September 23, 2015) .........................................16

*Bates v. Mortgage Electronic Registration System, Inc.*,
694 F. 3d 1076 (9th Cir. 2012) ...............................................................19

*United States ex rel. Booker v. Pfizer, Inc.*
9 F. Supp. 3d 34 (D. Mass. 2014)........................................................17, 18

*United States ex rel. Boothe v. Sun Healthcare Group, Inc.*,
496 F. 3d 1169 (10th Cir. 2007) ...............................................................15

*Carmel v. CVS Caremark Corp.*,
No. 13 C 5930, 2015 WL 3962532 (N.D. Ill. June 26, 2015) ..............................8

*Charter Oak Fire Ins. Co. v. Broan Nutone, L.L.C.*,
348 F. Supp. 2d 934 (W.D. Tenn. 2004) ......................................................1

*United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.*,
579 F. 3d 13 (1st Cir. 2009).................................................................10, 17

*Graham Cnty. Soil and Water Conserv. Dist. v. United States ex rel. Wilson*,
559 U.S. 280, 130 S.Ct. 1396 (2010)..........................................................8

*U.S. ex rel. Hogget v. University of Phoenix*,
No. 10-cv-02478 MCE, 2014 WL 3689764 (E.D. Cal. July 24, 2014) ...........................................................................................8

*United States ex rel. Poteet v. Bahler Medical Inc.*,
619 F. 3d 104 (1st Cir. 2010).................................................................9, 11

*United States ex rel. Poteet v. Lenke*,
604 F. Supp. 2d 313 (D. Mass. 2009)..........................................................15

*U.S. Sanford v. Brown, Ltd.*,
788 F. 3d 696 (7th Cir. 2015) .................................................................19

MOTION TO DISMISS OF SHIELD CALIFORNIA HEALTH CARE CENTER INC.

**TABLE OF AUTHORITIES** (cont.)                     **Page(s)**

*United States of America ex rel. Terry Donath and State of California
ex rel. Terry Donath, v. Whitestone Corporation, et al.,*
C.D. Cal. No. SACV 07-0995 DOC ................................................................2

*U.S. ex rel. Winkelman v. CVS Caremark Corp.,*
No. 11-11398-DJC, 2015 WL 4624134 (D. Mass., July 29, 2015) ................8, 9

**Federal Statutes**

31 U.S.C. § 3730(e)(4)................................................................................3, 8, 9

42 U.S.C. §§ 1396 *et seq.*................................................................................2

False Claims Act ................................................................................*passim*

**State Statutes**

Cal. Gov't Code
§ 12652................................................................................4, 19
§ 12652(c)(3) ................................................................................20
§ 12652(d)(3) ................................................................................3
§ 12652(d)(3)(A)................................................................................10
§ 12652(d)(3)(B)[2011] ................................................................19

Cal. Welf. & Inst. Code §§ 14000 *et seq.* ................................................2

**Federal Rules**

Fed.R.Civ.P
12(b)................................................................................1
12(b)(1) ................................................................................8
12(b)(6) ................................................................................8, 9

Local Rule
7.1(a)(2) ................................................................................1
7.1(d)................................................................................1

**Other Authorities**

2012 Legis. Serv. Ch. 647 (A.B. 2492) ................................................19

MOTION TO DISMISS OF SHIELD CALIFORNIA HEALTH CARE CENTER INC.
1200325.1

# MOTION

Defendant Shield California Healthcare Center, Inc. ("Shield") hereby moves this Court pursuant to Fed.R.Civ.P 12(b) to dismiss Claims For Relief VII, VIII, IX, XII and XIII of the Relators' second amended Complaint and those allegations pertaining to them and other related allegations on the grounds that the allegations regarding these claims for relief were publicly disclosed by others prior to the Relators' filing this action and the Relators failed to disclose information regarding such public allegations/transactions to the federal and state governments prior to filing their original action.

This motion is supported by the memorandum of points and authorities that follows this motion in this same document and the accompanying exhibits in support of the motion and on the other pleadings on file with the Court.[1]

Pursuant to Local Rule 7.1(a)(2), Counsel for Defendant Shield and the Relators conferred previously to attempt to resolve or narrow the issues to be resolved by this motion.  However, they have been unable to do so making this motion necessary.  Moreover, the issues were discussed briefly during the January 26, 2016 scheduling conference.

## REQUEST FOR ORAL ARGUMENT

While the January 26, 2016 order (Doc. 71) does not provide for oral argument on the instant motion, if the Government's contemplated Statement of Interest raises any new issues, Shield requests the opportunity to respond orally or in writing to such new issues pursuant to Local Rule 7.1(d) to assist the court in determining the outcome of the motion.

---

[1]  The Court may take judicial notice of the accompanying, supporting exhibits and consider them as part of the motion to dismiss without converting the motion to a motion for summary judgment.  *See Charter Oak Fire Ins. Co. v. Broan Nutone, L.L.C.*, 348 F. Supp. 2d 934, 937 (W.D. Tenn. 2004) citing Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1364 (West 2004).

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Shield is one of several defendants in this False Claims Act ("FCA") action.[2]
The three *qui tam* relators in this action filed their original FCA Complaint on
December 2, 2011, contending that Shield, a medical supply company, submitted
false Medicare and Medicaid claims which were tainted by kickbacks that the
manufacturers of medical supplies gave to Shield to induce them to use their
products.  Three years later, in their November 2014 Amended Complaint, after
retaining new counsel, these same relators apparently experienced a memory
recovery and added numerous new allegations unrelated to the allegations in the
original complaint contending for the first time that Shield also submitted false
claims to the Medi-Cal Program by violating a Medi-Cal rate limit known as the
Medi-Cal Upper Billing Limit.[3]

Long before these three relators in this action (the "Massachusetts action")
filed their FCA Complaint against Shield, a different relator filed an FCA action
containing nearly identical allegations against Shield and others in the Central
District of California, entitled "*The United States of America ex rel. Terry Donath
and State of California ex rel. Terry Donath, v. Whitestone Corporation, et al.,*"
No. SACV 07-0995 DOC, (the "California action").

The California action involved the same essential facts alleged by the
relators in the instant case (the "Massachusetts action") with respect to alleged
kickbacks purportedly given to Shield by manufacturers.  Moreover, and most
critical to this motion, the California action focused on purportedly false claims

---

[2]  The relators' original Complaint, the complaint relevant to this motion to
dismiss, erroneously identifies Shield as "Shield Medical, Inc."  The relators'
Amended Complaint (Doc. 21) corrects this error.

[3]  Medi-Cal is California's Medicaid Program, the federal/state health insurance
program for the poor.  42 U.S.C. §§ 1396 *et seq.* and Cal. Welf. & Inst. Code §§
14000 *et seq.*  The Upper Billing Limit is precisely the type of arcane rule that
should *not* be the subject of a False Claims Act case.

arising from Shield's alleged violation of the Medi-Cal Upper Billing Limit.  As mentioned above, in November 2014 – long after the allegations of the California action were made public – the relators in the Massachusetts action added these very same Medi-Cal Upper Billing Limit allegations to their instant action against Shield.[4]

Under such circumstances, the FCA's public disclosure bar, 31 U.S.C. § 3730(e)(4), and the parallel California FCA law, Cal. Gov't Code § 12652(d)(3), require the Court, at a minimum, to dismiss those claims in the Second Amended Complaint pertaining to Shield's alleged violation of the Medi-Cal Upper Billing Limit because they had been publicly disclosed in November 2011, before the relators here filed the original instant lawsuit.  Indeed, the public disclosure occurred three years before the relators amended their original Complaint to add the Upper Billing Limit allegations – allegations not contained in the original action which they copied nearly verbatim from the California action.[5]

The relators may not avoid the public disclosure bar with respect to their Medi-Cal Upper Billing Limit allegations by characterizing themselves as "original sources" of these allegation.  In fact, they do not qualify as  "original sources" of such allegations under either the version of the Federal FCA in effect prior to the March 23, 2010 amendment of the public disclosure bar provision or under the amended federal provision or under the parallel State law.  This is so because the Relators did not even mention the Medi-Cal Upper Billing Limit

---

[4]  On June 1, 2015, the relators filed a Second Amended Complaint (Doc. 40), which does not affect or add to the allegations against Shield contained in the first amended complaint.  Indeed, the numbered paragraphs of the first amended complaint are identical to those of the Second Amended Complaint with respect to the issues discussed herein.

[5]  Many of the allegations of kickbacks are also the same as those raised originally in the California action and should also be dismissed.  This motion focuses primarily on the Medi-Cal Upper Billing Limit because the relators simply copied their allegations directly from the amended complaint in the California action and they now appear to form the thrust of the relators' complaint here against Shield.

MOTION TO DISMISS OF SHIELD CALIFORNIA HEALTH CARE CENTER INC.

allegations in their original Complaint and thus do not (and cannot) allege that they disclosed information or allegations pertaining to the Upper Billing Limit to the Federal or State government prior to filing the action, as required by law.

Instead, the relators waited until November 2014 to cut and paste the allegations from the California complaint into their Amended Complaint. This occurred long after the relators were required to provide the government with information or allegations about the Medi-Cal Upper Billing Limit, including the irresponsible and unsupportable allegation that Shield continued to violate the UBL after the relator dismissed Shield from the California action in 2011.

## II.    THE PROCEDURAL FACTS

### A.    The California FCA Action

In 2007, the relator in the California FCA case filed his original complaint on behalf of the United States and California. He subsequently amended the complaint on April 19, 2010. (The amended complaint [without exhibits] is contained in the accompanying documents as Exhibit A.)[6] As required by the FCA, the original and first amended California complaints were filed under seal. The United States and the State of California investigated these allegations for years and eventually decided to partially intervene in the California action in November 2011. *See* November 16, 2011 notice of election, etc., Exhibit B.

As here, the relator in the California action alleged that Shield caused false claims to be submitted to the United States and the State of California through the submission of false claims to the Medi-Cal Program. Shield, a medical supplier, allegedly did so by violating the federal and state Anti-Kickback Statutes ("AKS") and the Medi-Cal Program's Upper Billing Limit. California complaint, Exhibit A, paras. 2, 22-30, 54-94, and 176-183, etc. (Upper Billing Limit violations) and

---

[6] The California action was also brought by the relator on behalf of the State of California under the California False Claims Act, Cal. Gov't Code § 12652.

MOTION TO DISMISS OF SHIELD CALIFORNIA HEALTH CARE CENTER INC.

1200325.1

31-47, and 184-195, etc. (AKS violations).  The relator provided the attorneys general for the United States and California with material evidence and information related to the allegations in the California complaint when he filed the action.  California complaint, para. 5.

According to the relator in the California case, the manufacturers gave Shield discounts, rebates and free supplies to induce Shield to purchase their products for Shield's patients/customers.  These manufacturers allegedly gave Shield the rebates, discounts and other remuneration knowing that Shield would not reflect them in their claims submitted to the Medi-Cal Program.  California complaint, paras. 78-92.  The relator further alleged that Shield entered into kickback arrangements not only with the manufacturers named in the suit but also with "others."  California complaint, para. 177.

Based on the allegations in the California complaint, the relator asserted thirteen different causes of action against Shield under the federal and state FCAs. *See* California complaint, Counts 1-3, 5-8, 10-13, and 15-16.

As part of the federal and state governments' investigations of Shield triggered by the California action, the Department of Health and Human Services Office of Inspector General issued an administrative subpoena to Shield on March 19, 2008 (Exhibit C), requesting the production of voluminous documents, including all documents referring to any manufacturer's or distributor's offering or granting of discounts, rebates, free supplies, etc., to Shield, and any contracts and agreements with such other manufacturers.  Exhibit C, para 23.  The document request pertained to medical supplies for Medicare and Medi-Cal patients.

Of the thousands of documents produced pursuant to this Subpoena, Shield produced agreements with more than 20 manufacturers in addition to those actually named as defendants in the California complaint, including, *e.g.,* a "Preferred

MOTION TO DISMISS OF SHIELD CALIFORNIA HEALTH CARE CENTER INC.

Vendor Program" arrangement between Hollister and Shield.  *See* March 2002 agreement, Exhibit D.

As a result of their joint investigation of the relator's allegations in the California case, the federal and state governments presented Shield with an analysis of their alleged damages (Exhibit E) in which they listed Shield's relationship/arrangements with 34 different vendors of medical supplies, including Coloplast, Inc., and Hollister, Inc.

As indicated above, the government eventually intervened partially in the relator's case in California to settle the claims against Shield without Shield admitting any liability.  On November 22, 2011, the California district court ordered the relator's First Amended Complaint to be unsealed and further ordered that the claims in the relator's First Amended Complaint against Shield be dismissed with prejudice.  It retained jurisdiction over the action to resolve any attorneys' fees disputes between Shield and the relator and to continue with the ongoing dispute pertaining to the defendants not dismissed from the relator's action on November 22, 2011.  *See* November 22, 2011 Orders, Exhibit F.  The action was not finally dismissed until January 23, 2013.  *See* January 23, 2013 Order, Exhibit G.

> **B.**     **The Massachusetts FCA Action**

On December 2, 2011, the three relators in the instant matter filed their original Complaint on behalf of the United States against various medical supplies companies, including Shield, and against two manufacturers, Coloplast and Hollister.  The original Complaint alleges that these companies, including Shield, violated the FCA as a result of "numerous kickbacks paid by Defendant medical device manufacturers to medical suppliers," including Shield.  Complaint, Para. 1. The kickbacks were paid to induce the medical suppliers to recommend, refer,

MOTION TO DISMISS OF SHIELD CALIFORNIA HEALTH CARE CENTER INC.

order and purchase the manufacturers' medical products.  Original Complaint, para. 2.

As an example of the improper arrangements between Shield and its vendors, the relators allege in 2011 that Coloplast and Shield had "partnered" for more than five years during which Shield received below-market discounts and incentive payments or rebates in exchange for agreeing to make minimum volume purchase commitments.  Original Complaint, para. 86.  These "disguised kickbacks" allegedly caused Shield and the other medical suppliers in the Massachusetts Complaint to submit false claims to the Medicaid and Medicare programs.  Original Complaint, para. 95 and Counts 1 and 2.

On November 20, 2014, the three relators filed an "Amended Complaint" (Doc. 21) adding the State of California as a plaintiff and adding completely new allegations that Shield violated the FCA by violating the Medi-Cal Upper Billing Limit.  Amended Complaint, paras. 39-43, and 213-229 and others.  The three relators also expressly acknowledge in their Amended Complaint the existence of the California FCA action against Shield and contend, without any supporting allegations, that Shield continued to defraud Medi-Cal after the effective date of the settlement agreement in that case based on the same conduct.  Amended Complaint, para. 224.

As demonstrated below, the primary allegations in the relators' First Amended Complaint about the Medi-Cal Upper Billing limit are copied nearly verbatim from the California first amended complaint.  The same is true of the more recently filed Second Amended Complaint (Doc. 40), as pointed out above (footnote 4).

MOTION TO DISMISS OF SHIELD CALIFORNIA HEALTH CARE CENTER INC.

III.    **THE FEDERAL FCA PUBLIC DISCLOSURE BAR REQUIRES
        DISMISSAL OF THE RELATORS' MASSACHUSETTS ACTION**

A.      **A Motion Under Fed.R.Civ.P. 12(b)(6) is Appropriate for
        Resolving the Public Disclosure Bar Issue**

Effective March 23, 2010, Congress changed the FCA's public disclosure
bar, 31 U.S.C. § 3730(e)(4), from a jurisdictional bar (no court "shall have
jurisdiction over an action under this section") to one requiring dismissal of a
barred action or claim (the court "shall dismiss an action or claim under this
section"). *See United States ex rel. Absher v. Momence Meadows Nursing Ctr.,
Inc.*, 764 F. 3d 699, 705-06 (7th Cir. 2014) (*quoting* pre- and post-amendment
versions of Section 3730(e)(4)).

In *U.S. ex rel. Winkelman v. CVS Caremark Corp.,* No. 11-11398-DJC, 2015
WL 4624134 (D. Mass., July 29, 2015), this Court concluded that the public
disclosure bar is no longer a jurisdictional bar.  Pages 5-6.[7]  However, this Court
noted (footnote 4) that since the standard of review under Fed.R.Civ.P. 12(b)(6) is
similar to that accorded under Fed.R.Civ.P. 12(b)(1), "this is largely a distinction
without a difference."[8]

It is not clear whether the relators are asking for relief for claims submitted
prior to March 23, 2010, the date the Federal public disclosure bar was amended,
or only for those submitted after the effective date of the amendment.  At some
parts of its second amended Complaint, the relator addresses periods from 2006 –
2009 (second amended Complaint, para. 339) while at others, they allege claims

---

[7]  Some courts continue to treat the public disclosure provision as a jurisdictional
bar.  *See, e.g., Carmel v. CVS Caremark Corp.*, No. 13 C 5930, 2015 WL 3962532
(N.D. Ill. June 26, 2015) at *4 and *U.S. ex rel. Hogget v. University of Phoenix*,
No. 10-cv-02478 MCE, 2014 WL 3689764 (E.D. Cal. July 24, 2014) at *5.

[8]  The amendment is not retroactive.  *Graham Cnty. Soil and Water Conserv. Dist.
v. United States ex rel. Wilson*, 559 U.S. 280, 130 S.Ct. 1396, 1400, n. 1 (2010).

1200325.1

submitted from "at least 2010" to the present (second amended complaint, para. 348).

For any pre-March 23, 2010 claims, the public disclosure is clearly jurisdictional.  Thus, the relators bear the burden of pleading and proving such jurisdiction exists.  *See United States ex rel. Poteet v. Bahler Medical Inc.*, 619 F. 3d 104, 109 (1st Cir. 2010).  And, applying this Court's reasoning in *Winkelman*, the relators should also bear the burden regarding the public disclosure issue under Rule 12(b)(6) since the distinction between 12(b)(1) and 12(b)(6) is largely one without a distinction for purposes of the public disclosure provision.

In any event, here, regardless of whether the bar is treated as jurisdictional or subject to a 12(b)(6) motion, the bar requires dismissal of the claims based on the lack of sufficient allegations in the relators' original Complaint to overcome the public disclosure bar, as explained further below.[9]

**B.      The Federal Public Disclosure Bar**

Under Section 3730(e)(4), prior to March 23, 2010, "no court shall have jurisdiction" over an action, among others, based on the public disclosure of allegations in a civil hearing unless the person bringing the action is an original source of the information.  To be an original source, one must have direct and independent knowledge of the information on which the allegations are based *and* must have voluntarily provided the information to the government before filing a *qui tam* action based on the information.

As amended in March 2010, Section 3730(e)(4) now provides that the court shall dismiss an action or claim, unless opposed by the government, if substantially the same allegations as alleged in the action or claim were publicly disclosed in,

---

[9]  The original Complaint is determinative of the public disclosure bar issues here just as it was in *Winkelman* at footnote 3.

MOTION TO DISMISS OF SHIELD CALIFORNIA HEALTH CARE CENTER INC.

among others, a federal civil hearing, unless the action is brought by a person who is an original source of the information.

"Original source" now means a person who either (1) *prior* to a public disclosure has voluntarily disclosed to the government the information on which allegations in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, *and* who has voluntarily provided the information to the government *before* filing an action under this section.[10]

Here, the relators do not allege, and cannot in fact allege, that they voluntarily disclosed the information about the Upper Billing Limit to the government prior to the public disclosure of the same or before filing their action.  Rather, the public disclosure of substantially identical allegations predated the relators' allegations about it by three years.

C.     **At a Minimum, the Allegations Regarding the Violations of the Medi-Cal Upper Billing Limit Were Publicly Disclosed When the First Amended Complaint Was Unsealed in the California Action**

The California first amended Complaint (Exhibit A) was unsealed on November 22, 2011.  *See* Exhibit F.  As discussed above, the California first amended Complaint contains extensive allegations of Shield filing false claims with the Medi-Cal Program due to its alleged violation of the Medi-Cal Upper Billing Limit.

Under both versions of the federal FCA, allegations disclosed in a federal civil action trigger the public disclosure bar.  *See United States ex rel. Duxbury v. Ortho Biotech Prods.*, *L.P.,* 579 F. 3d 13, 21 (1st Cir. 2009), in which allegations

---

[10]  California's FCA contains a similar public disclosure bar.  *See* Cal. Gov't Code § 12652(d)(3)(A).  However, this state statute was not amended until January 1, 2013, as discussed below, which separately, adversely impacts the relators' right to pursue an action under the California FCA.

1200325.1

were disclosed by a relator's FCA complaint.  *See also Poteet*, 619 F. 3d at 111("a civil complaint filed in court qualifies as a public disclosure").

There can be no dispute that the allegations in the Massachusetts action are "based upon" and are "substantially the same allegations" asserted in the California action.  In fact, the relators here admit as much in their first and second amended Complaints, at paragraph 224, where they state that the conduct they allege in their Massachusetts action "[stems] from the very same conduct" in which Shield is alleged to have engaged in the California action.

Indeed, most of the relators' allegations regarding Shield's purported violations of the Medi-Cal Upper Billing Limit in the first and second amended Complaints have obviously been cut and pasted from the allegations in the California first amended complaint.  *Compare, for example*, paragraphs 39, 42, 43, 213, 214, 217, 219, 220, 221, 222, 223, 228, 229, 230, 231, 232, 233, 234, 235, and 236 of the Massachusetts Second Amended Complaint with paragraphs 22, 29, 30, 69, 71, 74, 75, 76, 77, 78, 79, 83 85, 86, 87, 88, 89, 90, 91, and 92 of the first amended California Complaint.

For purposes of stressing the similarities, the following are selected examples with identical language highlighted.

| Massachusetts<br>Second Amended Complaint | California<br>First Amended Complaint |
|---|---|
| 39. There are two key regulatory mechanisms by which Medi-Cal limits the amounts it pays for medical supplies.  First, Medi-Cal negotiates prices for certain medical supplies and limits its maximum reimbursements based on the negotiated prices ("Negotiated Price Limits").  Second, Medi-Cal sets limits on how much suppliers can bill to Medi-Cal for | 22. There are two key regulatory mechanisms by which the Medi-Cal program limits the amounts it pays for medical supplies.  First, Medi-Cal negotiates prices for certain medical supplies and limits its maximum reimbursement amount based on the negotiated prices.  Second, Medi-Cal sets limits on how much suppliers can bill to Medi-Cal for medical supplies in |

MOTION TO DISMISS OF SHIELD CALIFORNIA HEALTH CARE CENTER INC.

1200325.1

| Massachusetts<br>Second Amended Complaint | California<br>First Amended Complaint |
|---|---|
| medical supplies in excess of the suppliers' own costs ("Upper Billing Limits"). | excess of their own costs. |
| 43. As a practical matter, the Upper Billing Limits regulation limits the amount that a supplier may bill Medi-Cal to the supplier's "net purchase price … plus no more than a 100 percent mark-up," *id.* At § 51008.1(a)(2), because this amount is generally the "lesser" amount compared to the "usual charges made to the general public," *id.* At § 51008.1(a)(1). | 30. As a practical matter, the upper billing limit regulation limits the amount that a provider may bill Medi-Cal to the provider's "net purchase price … plus a 100 percent markup," *id.* At § 51008.1(a)(2), because this amount is generally the "lesser" amount compared to the "usual charges made to the general public," *id.* At § 51008.1(a)(1). |
| 213. The Rebate Agreements worked as follows:  the Defendant Medi-Cal Supplier and Coloplast agreed on the "true" price of an item to be purchased by the Defendant Medi-Cal Suppliers. However, rather than invoicing the Defendant Medi-Cal Suppliers at this "true" price, the Defendant Medi-Cal Suppliers and Coloplast would artificially set the invoice price at or above the amount necessary to allow the Defendant Medi-Cal Suppliers to bill Medi-Cal at the maximum reimbursement amount, consistent with the Upper Billing Limits regulation. The Defendant Medi-Cal Suppliers and Coloplast would then set up a "rebate" or "chargeback" (collectively referred to as "rebate") which reduced the amount paid by the Defendant Medi-Cal Suppliers from the artificial invoice price, down to the true, agreed-upon | 69. The "volume rebate" agreements worked in essence as follows:  Shield and the supplier would agree on the "true" price of an item to be purchased by Shield.  However, rather than the supplier invoicing Shield at this "true" price, Shield and its suppliers would artificially set the invoice price at or above the amount necessary to allow Shield to bill Medi-Cal at the maximum reimbursement amount, consistent with the upper billing limits regulation. Shield and the supplier would then set up a "rebate," which reduced the amount paid by Shield from the artificial invoice price, down to the true, agreed-upon price. Rather than billing Medi-Cal based on its true net purchase price, i.e., with the rebate subtracted, as it should have, Shield instead billed Medi-Cal based on the full invoice price, and failed to reflect the rebate in |

| Massachusetts<br>Second Amended Complaint | California<br>First Amended Complaint |
|---|---|
| price.  Rather than billing Medi-Cal based on its true net purchase price (with the rebate subtracted) as it should have, the Defendant Medi-Cal Suppliers instead billed Medi-Cal based on the full fictitious invoice price, and failed to reflect the rebate in its claims to Medi-Cal.  In this way, the Defendant Medi-Cal Suppliers would be reimbursed the maximum reimbursement amount, even though such reimbursement exceeded its net purchase price plus a 100% markup, in violation of the Upper Billing Limit regulations. | its claims to Medi-Cal.  In this way, Shield would be reimbursed the maximum reimbursement amount, even though such reimbursement exceeded its net purchase price plus a 100% markup, in violation of the upper billing limit regulation. |
| 214.  The rebates agreed to between the Defendant Medi-Cal Suppliers and Coloplast were ostensibly based on the volume of products purchased by the Defendant Medi-Cal Suppliers, and provided for increased rebate percentages and chargeback prices, corresponding to several "tiers" of product volume, measured in dollars.  In reality, however, the rebates were guaranteed, because the Defendant Medi-Cal Suppliers and Coloplast deliberately set the volume "tiers" that triggered the rebates near, or even below, the volumes the Defendant Medi-Cal Suppliers were already purchasing from Coloplast, and also set the corresponding rebate percentages and chargeback prices such that the Defendant Medi-Cal Suppliers' inflated invoice price would always be rebated | 71.  The "rebates" agreed to between Shield and its suppliers were ostensibly based on the volume of products purchased by Shield, and usually provided for increasing rebate percentages, corresponding to several "tiers" of product volume, measured in dollars.  In reality, however, the rebates were guaranteed, because Shield and its suppliers deliberately set the volume "tiers" that triggered the rebates near, or even below, the volume Shield was already purchasing from the supplier (or from another supplier), and also set the corresponding rebate percentages such that Shield's inflated invoice price would always be rebated down to the true, bargained-for price. |

MOTION TO DISMISS OF SHIELD CALIFORNIA HEALTH CARE CENTER INC.

| Massachusetts<br>Second Amended Complaint | California<br>First Amended Complaint |
|---|---|
| down to the true, bargained-for price. | |
| 220.  Thus, instead of being motivated by a *bona fide* attempt to induce or reward higher purchase volumes, like a legitimate volume rebate contract, the rebate and chargeback agreements between the Defendant Medi-Cal Suppliers and Coloplast were a sham. Likewise, the invoice prices and rebate percentages/chargeback prices in the contracts between the Defendant Medi-Cal Suppliers and Coloplast were not arrived at through an arms-length transaction, but were the product of collusion between Defendant Medi-Cal Suppliers and Coloplast which was specifically designed to set invoice prices at a false or artificial level determined by the Medi-Cal reimbursement amount and then to "back out" the rebate amount so as to reach the price actually agreed on between the parties, all with the purpose of evading Medi-Cal Upper Billing Limit regulation. | 76.  Thus, instead of a [sic] being motivated by a *bona fide* attempt to induce or reward higher purchase volumes, like a legitimate volume rebate contract, the rebate contracts between Shield and its suppliers were a sham. Likewise, the invoice prices and rebate percentages in the contracts between Shield and its suppliers were not arrived at through an arms-length transaction, but were the product of collusion between Shield and its suppliers which was specifically designed to set invoice prices at a false and artificial level determined by the Medi-Cal reimbursement amount and then to "back out" the rebate amount so as to reach the price actually agreed on between the parties, all with the purpose of evading Medi-Cal's upper billing limit regulation. |
| 230.  The invoice prices upon which Defendant Medi-Cal Suppliers based their claims to Medi-Cal never reflected Defendant Medi-Cal Suppliers' true "net purchase price," because once Defendant Medi-Cal Suppliers entered into volume rebate agreements with Coloplast, the Defendant Medi-Cal Suppliers always received rebates and/or prompt payment discounts off the | 86.  The invoice prices upon which Shield based its claims to Medi-Cal never reflected Shield's true "net purchase price," because once Shield entered into a "volume rebate" agreement with one of its suppliers, Shield always received rebates and/or prompt payment discounts off the invoice price, in every financial quarter or other period thereafter.  The "tiers" in |

MOTION TO DISMISS OF SHIELD CALIFORNIA HEALTH CARE CENTER INC.

| Massachusetts Second Amended Complaint | California First Amended Complaint |
|---|---|
| invoice price, in every financial quarter or other applicable period.  The "tiers" in the rebate agreement were pre-determined such that Defendant Medi-Cal Suppliers would always qualify for a rebate.  Thus, the rebates were known to Defendant Medi-Cal Suppliers at all times and were guaranteed by contract.  In every financial quarter, or other applicable period, the invoice prices would be rebated down to the "true" net purchase price as previously agreed. | the rebate agreement were pre-determined such that Shield would always qualify for a rebate.  Thus, the rebates were known to Shield at all times and were guaranteed by contract.  In every financial quarter or other period, the invoice prices would be rebated down to the "true" net purchase price as previously agreed between the parties. |
| 232.  Likewise, even when Defendant Medi-Cal Suppliers had already purchased sufficient volume in a given quarter to qualify for a rebate of a specific percentage under one or more of the "tiers" in their volume rebate contract, and the receipt of rebates was therefore known by the Defendant Medi-Cal Suppliers and unambiguously guaranteed by contract, Defendant Medi-Cal Suppliers still did not reflect the rebates in their claims to Medi-Cal. | 88.  Likewise, even when Shield had already purchased sufficient volume in a given quarter to qualify for a rebate of a specific percentage under one or more of the "tiers" in its volume rebate contract, and the receipt of a rebate was therefore known by Shield and unambiguously guaranteed by contract, Shield still did not reflect the rebate in its claims to Medi-Cal. |

Only the time frames are different in the two actions.  And, such time differences do not prevent the application of the public disclosure bar.  *See United States ex rel. Poteet v. Lenke*, 604 F. Supp. 2d 313, 321 (D. Mass. 2009), affirmed by *Poteet*, *supra*.  *See also United States ex rel. Boothe v. Sun Healthcare Group, Inc.*, 496 F. 3d 1169, 1174 (10th Cir. 2007) ("we reject the contention that a 'time, place and manner' distinction is sufficient to escape the force of the public disclosure bar").

**D.**     **The Relators Do Not Meet the Original Source Requirements With Respect to the Allegations Concerning the Medi-Cal Upper Billing Limit**

As discussed above, to qualify as an original source of publicly disclosed allegations or transactions, a person must have voluntarily provided information to the government about the allegations at issue "before filing an FCA action" at the latest.  This requirement is applicable under both versions of the FCA.  It is not enough that the relator purportedly has information that is independent of or materially adds to the publicly disclosed allegations or transactions.  The relators must also have provided the government with such information in advance of initiating the *qui tam* action.  The relators here simply have not pleaded and cannot plead that they satisfied this requirement with respect to the allegations pertaining to the Medi-Cal Upper Billing Limit.[11]

Their original Complaint does not even discuss the Upper Billing Limit or even include the State of California.  The relators did not even mention it until they retained new counsel who added it to their action in November 2014 when they filed their first amended Complaint – three years after the allegations were first in the public domain and long after the allegations were fully investigated by the federal and state governments as part of the California action.  The original Massachusetts action focuses instead on Medicare claims and simply mentions Medicaid in passing.

Thus, the relators here cannot claim, and do not attempt to allege in their original Complaint, that they furnished any information about the Medi-Cal Upper Billing Limit to the federal or state government prior to filing this action in

---

[11]  Conclusory allegations regarding the original source issue are not sufficient to meet the original source requirement.  *See U.S. ex rel. Ambrosecchia v. Paddock Laboratories,* No. 12 CV 2164 RLW, 2015 WL 5605281 (E.D. Mo. September 23, 2015) at page *7.

1200325.1

December 2011.  As a result, they do not satisfy the requirements of the original source exception to the public disclosure bar.

The relators may not avoid this result by asking the Court to consider information they might have given the government long *after* the original Complaint was filed, such as when they filed the Amended Complaint in November 2014.  *See Duxbury*, 579 F. 3d at 28 ("in order to qualify as an 'original source' [the relator has] to provide his information prior to the filing of the Original Complaint, rather than the Amended Complaint").

In *Duxbury*, the relator alleged in his amended complaint that he provided sufficient information about the transactions/allegations to the government before filing suit.  However, the Court upheld the district court's rejection of this conclusory allegation.  *Id.*  Here, the relators do not make a similar allegation in their Amended Complaint.  Rather, at paragraph 11, they simply state that they "properly served" the original and amended Complaints on the United States and the State of California.  This allegation does not satisfy the showing necessary to meet the original source requirement of actually providing the government with the required information before filing the action.

For these same reasons, the relator cannot successfully bootstrap their conclusory allegation in their November 2014 Amended Complaint (paragraph 224) about Shield continuing to violate the Upper Billing Limit to argue the public disclosure bar is not applicable because they were the first to allege that the practice allegedly continued after the California action was dismissed.  In fact a similar attempt was rejected in *United States ex rel. Booker v. Pfizer, Inc.* 9 F. Supp. 3d 34 (D. Mass. 2014).[12]

---

[12]  It is not plausible to assume that the relators had first hand, independent knowledge of any alleged continuation of the practice in 2012 and thereafter since Ms. Herman and Mr. Roseff were terminated by Coloplast in 2011 (paras. 251 and 255), and Ms. Lestage did not work on the Shield accounts while at Coloplast (para. 257).

---

MOTION TO DISMISS OF SHIELD CALIFORNIA HEALTH CARE CENTER INC.

While this Court noted in *Pfizer* that the public disclosure provision is not meant to deprive relators of their role as private attorneys-general when they come forward with evidence of new fraudulent activity that is perpetrated by the old *modus operandi,* it ultimately decided that a relator making such an allegation is still subject to the public disclosure bar and may only avoid the bar if the relator voluntarily provided the information to the government *before* filing any action.  9 F. Supp. 3d at 46-47 ("Thus, while finding the public disclosure provision potentially applicable here, I also conclude that the current 'original source' exception is the appropriate framework for analyzing whether Relators' claims nevertheless remain viable").

In *Pfizer,* the relators adequately alleged they did so.  Here, the relators do not make this required allegation and cannot do so because they obviously did not provide information about the Upper Billing Limit to the government before filing this action in 2011, the critical time for doing so.[13]

---

[13]  The only plausible explanation for the relators' three-year delay in alleging Shield's noncompliance with the Upper Billing Limit is that when required to file an amended complaint in November 2014, the three relators discovered and incorporated verbatim the allegations from the California action into their first amended complaint.  This is exactly the type of parasitic and opportunistic actions the public disclosure bar has always been intended to prevent.  Between 2007 and 2011, the federal and state governments fully investigated the allegations about the Upper Billing Limit leading to the settlement of the California action.  The case would not have settled as it did if the allegedly wrongful conduct had been continuing.  In fact, the government did not even insist on any type of ongoing corporate integrity agreement as part of the settlement, which the government would have done if it suspected Shield of continuing any alleged wrongdoing.  The relators here are simply using unsupportable allegations about the continuation of the conduct to try to avoid the adverse impact of the public disclosure bar.

MOTION TO DISMISS OF SHIELD CALIFORNIA HEALTH CARE CENTER INC.

## IV.   THE CALIFORNIA FCA PUBLIC DISCLOSURE BAR AND OTHER STATE LAW REQUIREMENTS SEPARATELY PROHIBIT RELATORS FROM MAINTAINING THIS ACTION ON BEHALF OF THE STATE OF CALIFORNIA

Count IX of the Second Amended Complaint is based exclusively on the California FCA.  Relators contend in that count that Shield caused false claims to be submitted to the Medi-Cal program by violating the Upper Billing Limit.  This count must be dismissed under the California FCA.

As indicated above, the California FCA has its own public disclosure bar. The bar remained  jurisdictional in nature (*See Bates v. Mortgage Electronic Registration System, Inc.,* 694 F. 3d 1076 (9th Cir. 2012)) until January 1, 2013 when it was  amended to make the State public disclosure bar similar to the current federal public disclosure bar.  *See* 2012 Legis. Serv. Ch. 647 (A.B. 2492) amending Cal. Gov't Code § 12652 among others.  However, just as the Federal bar may not be applied retroactively to actions filed prior to the March 23, 2010 federal amendment (*see U.S. Sanford v. Brown, Ltd.*, 788 F. 3d 696, 703 (7th Cir. 2015)), it follows that the State public disclosure bar may not be applied to a lawsuit, such as this one, filed prior to the January 1, 2013, the effective date of the State law amendment.

Clearly, under the State public disclosure bar in effect when this action was filed the California action constituted a public disclosure just as it did under the Federal FCA.  And, in order to be the original source of publicly disclosed information under the California FCA, a relator must have been, among others, the source or catalyst for the public disclosure, itself.  Cal. Gov't Code § 12652(d)(3)(B)[2011], which was not the case here.

Moreover, under the State FCA, other requirements must be satisfied for a relator to maintain a *qui tam* action.  For example, the relators would have had to

serve the State Attorney General with a copy of the complaint and a written disclosure of all material evidence in their possession when they filed their original complaint.  *See* Cal. Gov't Code § 12652(c)(3).  The relators did not do so here and do not allege as much in their original complaint.  Indeed, the relators did not even include the State of California in their original complaint.

## V.   **CONCLUSION**

Based on the foregoing, Shield respectfully requests this Court to grant its motion to dismiss the relators' claims against Shield, especially those allegations against Shield pertaining to the submission of Medi-Cal claims.

DATED: February 5, 2016

/s/ Patric Hooper

Patric Hooper (Ca. SBN 57343)
*Admitted Pro Hac Vice*
HOOPER, LUNDY & BOOKMAN, P.C.
1875 Century Park East, Suite 1600
Los Angeles, California 90067-2517
(310) 551-8111
(310) 551-8181 (fax)
phooper@health-law.com

Joseph R. LaMagna (SBN 668889)
HOOPER, LUNDY & BOOKMAN, P.C.
101 W. Broadway, Suite 1200
San Diego, CA 92101-8214
(619) 744-7305
(619) 230-0987 (fax)
jlamagna@health-law.com
*Attorneys for Defendant Shield California
Health Care Center, Inc.*

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 1875 Century Park East, Suite 1600, Los Angeles, CA 90067-2517.

On February 5, 2016, I served true copies of the following document(s) described as **MOTION TO DISMISS OF SHIELD CALIFORNIA HEALTH CARE CENTER INC. AND SUPPORT MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Hooper, Lundy & Bookman, P.C.'s practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Los Angeles, California.

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 5, 2016, at Los Angeles, California.

Patti Newler

**SERVICE LIST**
**United States of America, et al. v. Coloplast A/S, et al.**
**11-cv-12131 RWZ**

George B. Henderson , II
Office of the U.S. Attorney
1 Courthouse Way, Ste. 9200
John J. Moakley U.S. Courthouse
Boston, MA 02210
Tel:  (617) 748-3272
Email: George.Henderson2@usdoj.gov

*Attorneys for United States of America*

*Via CM/ECF*


Kriss Basil
United States Attorney's Office MA
1 Courthouse Way, Suite 9200
Boston, MA 02210
Tel:  (617) 748-3387
Email: kriss.basil@usdoj.gov,
alisis.pena@usdoj.gov,
CaseView.ECF@usdoj.gov

*Attorneys for United States of America*

*Via CM/ECF*


Taylor R. Neff
Verrill & Dana, LLP
One Portland Square
Portland, ME 04112-0586
Tel:  (207) 774-4000
Email: tneff@verrilldana.com

*Attorneys for Relators*

*Via CM/ECF*


Paul W. Shaw
Verrill Dana, LLP
One Boston Place, Suite 1600
Boston, MA 02108
Tel:  (617) 309-2600
Email: pshaw@verrilldana.com,
idamato@verrilldana.com

*Attorneys for Relators*

*Via CM/ECF*


Jeffrey E. Marcus
Marcus, Neiman & Rashbaum
2 S Biscayne Blvd., Suite 1750
Miami, FL 33131
Tel:  (305) 400-4265
Email: imarcus@mnrlawfirm.com

*Attorneys for Relators*

*Via CM/ECF*


Ingrid S. Martin
Collora LLP
100 High Street, 20th Floor
Boston, MA  02110
Tel:  (617) 371-1022
Email:  imartin@collorallp.com

*Attorneys for Defendant*
*CCS Medical Supplies, Inc.*

*Via CM/ECF*

Lauren A. Graber                          *Attorneys for Defendant*
Collora LLP                               *CCS Medical Supplies, Inc.*
100 High Street, 20th Floor
Boston, MA  02110
Tel:  (617) 371-1000                      *Via CM/ECF*
Email:  lgraber@collorallp.com

Paul R. Cirel                             *Attorneys for Defendant*
Collora LLP                               *CCS Medical Supplies, Inc.*
100 High Street, 20th Floor
Boston, MA  02110
Tel:  (617) 371-1025                      *Via CM/ECF*
Email:  pcirel@collorallp.com,
imartin@collorallp.com,
mcottreau@collorallp.com

Jose P. Sierra                            *Attorneys for Defendant*
Laredo & Smith LLP                        *A-Med Health Care, Inc.*
101 Federal Street, Suite 650
Boston, MA  02110
Tel:  (617) 443-1100                      *Via CM/ECF*
Email:  sierra@laredosmith.com

Kenny Nachwalter, PA                      *Interested Party*
1100 Miami Center
201 South Biscayne Blvd.                  *Via U.S. Mail*
Miami, FL  33131
Tel:  (305) 373-1000

MOTION TO DISMISS OF SHIELD CALIFORNIA HEALTH CARE CENTER INC.

1200325.1