UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 11-12131-RWZ


UNITED STATES OF AMERICA
and THE STATE OF CALIFORNIA,
*ex rel.* KIMBERLEY HERMAN, *et al.*

v.

COLOPLAST CORP., *et al.*


<u>OPINION AND ORDER</u>

July 29, 2016


ZOBEL, J.

Plaintiff-relators Kimberley Herman, Amy Lestage, and Kevin Roseff, each a current or former employee of defendant Coloplast Corp., a manufacturer of ostomy and continence care products, allege that many firms within that industry have defrauded federal healthcare programs by equally numerous schemes. Relators, on behalf of the United States and the State of California, have sued those firms under the antifraud provisions of the federal False Claims Act (FCA), 31 U.S.C. §§ 3729 <u>et seq.</u>, and its California counterpart, Cal. Gov. Code §§ 12650 <u>et seq.</u>[1] The parties have settled several such claims—against Coloplast, Liberator Medical Supply, Inc., Hollister Inc., and Byram Healthcare Suppliers, Inc.—following the United States' intervention. <u>See</u> Docket # 92. Relators, however, maintain several antifraud claims in which neither the

---

[1] Relators have also sued Coloplast under the federal FCA's antiretaliation provision, 31 U.S.C. § 3730(h), though the instant motions have no bearing on these claims.

United States nor California have elected to intervene. Against Hollister, an ostomy and continence product manufacturer in competition with Coloplast, relators allege a conspiracy to submit false claims by violating Medicare's prohibition on telephone solicitation. Against CCS Medical, Inc., a supplier of ostomy and continence products, they allege a kickback scheme between that firm and Coloplast.

Hollister and CCS have moved to dismiss the claims against them. Docket ## 139, 141. Hollister's motion is denied, and CCS's motion is allowed.

## I.   Background

### A.   Hollister

Hollister's Secure Start program targets for enrollment patients who require ostomy and continence care products as they transition from hospital to home care. Enrolling patients provide Hollister with information concerning their diagnoses and insurers and let the company know how to contact them; in return, Hollister provides these patients with free product samples. On the day that the samples arrive, Hollister's Secure Start Program Coordinators then follow up with enrollees by phone to determine which Hollister products the patient needs and to select a supplier for those products. Program coordinators then transfer the patient's call to the selected supplier to place an order and routinely check in with patients thereafter. See generally Third Am. Compl., ex. 8.

Relators allege that this program essentially served as a telemarketing service for Byram, a supplier of Hollister's products. In addition to transferring patient phone calls to Byram, Hollister would forward weekly to the supplier a list of patients enrolled in Secure Start that included the patients' names, home and email addresses, discharge facilities, and product needs. See Third Am. Compl., ex. 9. Relators argue that this

arrangement evinces an agreement between Hollister and Byram, and that such an agreement constitutes a conspiracy to violate the federal FCA given Medicare's general prohibition against medical equipment suppliers initiating contact with beneficiaries. Hollister has moved to dismiss relators' claim against it, arguing that relators have completely failed to state a claim, or, in the alternative, that they have not done so with sufficient plausibility and particularity.

### B.    CCS

Coloplast purportedly offers volume-based discounts to suppliers with sufficient market power to move more of its products. Having identified CCS as such a supplier, Coloplast approached the company as a potential partner, offering escalating discounts in exchange for increased sales at some point in 2011. To boost sales, CCS relied on what relators term "hard" and "soft" tactics: under the hard approach, CCS simply lied to patients about the availability of other brands' products; under the soft approach, CCS or Coloplast would contact patients to persuade them to switch.

Relators argue that this arrangement constitutes a kickback in violation of the Anti-Kickback Statute, and predicate each of their FCA counts against CCS on violations of that statute.[2] CCS contends that the arrangement described in relators' complaint falls within the Anti-Kickback Statute's discount safe harbor, 42 U.S.C. § 1320a-7b(b)(3)(A) (2012), and has moved to dismiss on that ground.

## II.    Standard

The Federal Rules of Civil Procedure require complaints to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

---

[2]    Claims for payment submitted in violation of the Anti-Kickback statute are statutorily designated "false or fraudulent" for purposes of the FCA. 42 U.S.C. § 1320A-7b(g) (2012).

8(a)(2). Complaints alleging fraud "must state with particularity the circumstances constituting fraud," id. 9(b), a requirement applicable to each of the FCA violations alleged here, see United States ex rel. Gagne v. City of Worcester, 565 F.3d 40, 45 (1st Cir. 2009) ("heightened pleading requirements" of Rule 9(b) apply to complaints alleging the submission of false claims, the making or using of false records or statements material to false claims, and FCA conspiracies).[3] Although the court will credit all of a complaint's factual allegations, it grants no weight either to legal assertions or unsupported factual conclusions. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Gagne, 565 F.3d at 42. A complaint that fails to state, with particularity, a plausible claim upon which relief can be granted will be dismissed. See id.; see also Fed. R. Civ. P. 12(b)(6).

## III.   Discussion

### A.   Hollister

Relators argue that Hollister and Byram conspired to defraud the federal government by agreeing to submit Medicare claims tainted by violations of the prohibition on telephone solicitation.

The FCA imposes liability upon any person who conspires to violate it. 31 U.S.C. § 3729(a)(1)(C) (2012). "General civil conspiracy principles apply" to FCA conspiracy claims; this requires relators to plead, first, that a conspiracy between the defendant and at least one other person existed, and second, that at least one conspirator performed an act to effect the object of the conspiracy. United States v. President & Fellows of

---

[3]     Gagne addressed the version of the FCA in effect before Fraud Enforcement and Recovery Act of 2009 (FERA) amended it. The parties do not dispute, however, that Gagne governs pleading standards under the post-FERA statute.

Harvard Coll., 323 F. Supp. 2d 151, 196 (D. Mass. 2004). A plaintiff may plead conspiracy with particularity by alleging conduct from which the court can naturally infer an agreement among multiple parties. See, e.g., United States ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 194 (5th Cir. 2009).

Medicare generally prohibits suppliers of durable medical equipment from calling program beneficiaries and refuses to pay for products supplied in violation of this prohibition. 42 U.S.C. § 1395m(a)(17) (2012). The program allows such calls only if: (1) a beneficiary has consented to calls in writing; (2) a supplier calls to discuss an already-furnished covered item; or (3) a supplier calls to discuss a covered item other than an already-furnished covered item if the supplier has furnished at least one covered item to the beneficiary within the last fifteen months. Id. Although the statute only identifies suppliers of durable medical equipment, regulatory guidance clarifies that the prohibition extends to "an[y ]other party [acting] on the . . . supplier's behalf." 75 Fed. Reg. 2015 (Jan. 14, 2010). This ensures that "[s]uppliers cannot do indirectly that which they are prohibited from doing directly," i.e., calling Medicare beneficiaries to sell them covered products.

Although the company argues otherwise, this prohibition unambiguously precludes Hollister from telemarketing on Byram's behalf—holding otherwise would permit medical equipment suppliers to circumvent the prohibition simply by acting through a third party. Relators have likewise alleged, with particularity, a conspiracy between Hollister and Byram to circumvent the telemarketing prohibition and, by extension, the FCA. Relators' complaint depicts a scheme in which Hollister program coordinators call Medicare beneficiaries to sell them Hollister products, and then

transfer these calls to a supplier—Byram—to consummate the sales. Relators likewise allege that Hollister forwarded so-called "lead lists" of patients to Byram each week. The conduct described in the complaint sufficiently grounds a natural inference that Hollister and Byram had an agreement and thus discharges relators' pleading burden as to the first element of their conspiracy count. Relators have also satisfactorily pleaded the second element—that Hollister took some action to effect the object of the conspiracy. The complaint, and its supporting exhibits, plausibly describe several such acts, the most relevant of which are Hollister's phone calls to patients that the company transferred to Byram.

> **B.    CCS**

Relators' FCA claims against CCS all stem from alleged violations of the Anti-Kickback Statute as a result of discounts offered by Coloplast. That statute prohibits the "knowing[] and willful[] solicit[ation] or recei[pt]" of "any remuneration . . . in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item" paid for in part or in whole by any federal health care program. 42 U.S.C. § 1320a-7b(b)(1)(B). The statute also carves out several exemptions for arrangements that it would otherwise bar, among them any "discount or other reduction in price . . . if the reduction in price is properly disclosed and appropriately reflected in the costs claimed or charges made" to a federal program by the discount's recipient. Id. § 1320a-7b(b)(3)(A). As the Department of Health and Human Services has clarified through rulemaking, this exemption requires the discount, or terms of the rebate, to "be fixed and disclosed in writing to the buyer at the time of the initial sale of the good or service." 42 C.F.R. § 1011.952(h)(1)(iii) (2016). It likewise requires the buyer to provide, "upon request by the Secretary or a State agency" an

"invoice, coupon or statement" from the seller that "fully and accurately" reports such discount. Id. §§ 1001.952(h)(1)(iii)(B), (h)(2)(iii)(B); see also United States ex rel. Banigan v. Organon USA Inc., 883 F. Supp. 2d 277, 296 (D. Mass. 2012).

Relators have failed to sufficiently allege a violation of the Anti-Kickback Statute against CCS. Relators' own complaint describes discount negotiations between Coloplast and CCS that preceded Coloplast's sales to CCS—this is consistent with the Anti-Kickback Statute's demand that any discounts be fixed "at the time of the initial sale," 42 C.F.R. § 1011.952(h)(1)(iii). Relators do not, however, allege—and certainly not with the requisite particularity—that Coloplast failed to disclose the discounts to CCS in writing, nor do they allege that Coloplast and CCS enshrined the discounts through oral, collateral, or otherwise off-the-books agreements. See Banigan, 883 F. Supp. 2d at 296 (allegations that discounts contained in side agreements sufficiently state an AKS violation). Because each of Relators' FCA claims against CCS rest on violations of the Anti-Kickback Statute, each of those claims is dismissed.

## IV.    Conclusion

Hollister's Motion to Dismiss (Docket # 141) is DENIED, and CCS's Motion to Dismiss (Docket # 139) is ALLOWED.


| July 29, 2016 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL |
| | UNITED STATES DISTRICT JUDGE |