UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE UNITED STATES OF AMERICA, and ) <br> THE STATE OF CALIFORNIA, ) <br> *ex rel.* KIMBERLY HERMAN, AMY LESTAGE ) <br> and KEVIN ROSEFF, ) <br>   ) <br>   Plaintiffs, ) <br>   ) <br> v. ) <br>   ) <br> COLOPLAST CORP., *et al.* ) <br>   ) <br>   Defendants. ) | Civil Action No. 11-12131-RWZ |

**UNITED STATES' STATEMENT OF INTEREST REGARDING
HOLLISTER INCORPORATED'S MOTION FOR RECONSIDERATION**

**I.    INTRODUCTION**

The United States submits this Statement of Interest pursuant to 28 U.S.C. § 517, to respond to the incorrect interpretation of *Universal Health Services v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016), by Hollister Incorporated ("Hollister") in its Motion for Reconsideration of the Court's Denial of Its Motion To Dismiss Relators' Third Amended Complaint (see Dkt ##168, 169).  Because the United States remains the real party in interest even where it has not intervened in an action, *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 231 (1st Cir. 2004),[1] and because the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, is the United States' primary tool in prosecuting fraud on the government, the government has a substantial interest in the development of the law in this area

---

[1] The United States' decision to decline intervention as to the relators' claim that Hollister violated the telemarketing prohibition at 42 U.S.C. § 1395m(a)(17) cannot be taken as a statement on the underlying merits of relators' claims.  *See, e.g.*, *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 n. 17 (11th Cir. 2006); *United States ex rel. Feldman v. Van Gorp*, No. 03 Civ. 8165 (WHP), 2010 WL 2911606 (S.D.N.Y. Jul. 8, 2010).

and in the correct application of that law in this, and similar, cases. The government submits this statement of interest to respond to Hollister's erroneous interpretation of *Escobar* with respect to materiality under the FCA.

## II.     ARGUMENT

### A.     Relators Have Adequately Alleged Materiality

The False Claims Act defines the term "material" to mean "having a natural tendency to influence or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). In *Escobar*, the Supreme Court cited the statutory definition of materiality and noted that the "natural tendency" and "capable of influencing" concepts in that definition are derived from the common law and are used in other federal fraud statutes. *Escobar*, 136 S. Ct. at 2002 (citing *Neder v. United States*, 527 U.S. 1, 16 (1999); *Kungys v. United States*, 485 U.S. 759, 770 (1988)).

Hollister incorrectly implies that *Escobar* changed the FCA's "natural tendency" test for materiality under the FCA, even though *Escobar* expressly reaffirmed that, under the FCA, "the term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 136 S. Ct. at 2000 (*quoting* 31 U.S.C. 3729(b)(4)). This materiality inquiry can be undertaken from either the perspective of a "reasonable" person or the particular defendant: "'a matter is material …(1) [if] a reasonable [person] would attach importance to [it] in determining his choice of action in the transaction'; or (2) if the defendant knew or had reason to know that the recipient of the representation attaches importance to the specific matter 'in determining his choice of action,' even though a reasonable person would not." *Id.* at 2002-03 (*citing* Restatement (Second) of Torts § 538, at 80)). In other words, if a matter could be or is a "substantial factor" in determining the government's course of conduct, it

is material. *See* 26 R. Lord, Williston on Contracts § 69:12 (4th ed. 2003) (Williston) ("[I]t is not necessary to materiality that a misrepresentation have even been the paramount or decisive inducement, so long as it was a substantial factor.").

The Supreme Court did not depart from the statutory text and the common law and hold that a relator (or the United States) must demonstrate that the government would *in fact* refuse payment if it knew of the alleged violations. Rather, by embracing the "natural tendency" test codified in the FCA and enshrined in the common law, the Court made clear that materiality is determined through a holistic assessment of the tendency or capacity of the undisclosed violation to affect the government decision maker. The Court thus did not endorse an outcome-based requirement that a relator (or the United States) must show that a claim would not have been paid or even that it would "likely" not have been paid. Indeed, the principal authorities the Court relied upon in *Escobar* confirm that "it is not necessary to materiality that a misrepresentation have even been the paramount or decisive inducement, so long as it was a substantial factor." 26 R. Lord, Williston on Contracts § 69:12 (4th ed. 2003). *See also Kungys*, 485 U.S. at 770 ("It has never been the test of materiality that the misrepresentation or concealment would *more likely than not* have produced an erroneous decision, or even that it would *more likely than not* have triggered an investigation.") (emphases in the original).[2]

Stated another way, *Escobar* did not purport to impose a heightened test for materiality beyond the "natural tendency" test codified in the False Claims Act, entrenched in the common

---

[2] The Senate Report accompanying the legislation that defined materiality for purposes of the False Claims Act stated that it was intended to codify the definition used in *Neder v. United States*, 527 U.S. 1, 16 (1990). S. Rep. No. 111-10 at 12 & n.6. *Neder* applied the definition of materiality used in *Kungys v. United States*, 485 U.S. 759, 770 (1988). In *Kungys*, the Court rejected the argument that materiality employed a standard of "more likely than not" and indicated that something can be material even if it has less than a 30% chance of influencing the decisionmaker. *Id.* at 771.

law, and applied by this Court and others.  *See United States ex rel. Loughren v. Unum Group*, 613 F.3d 300, 307 (1st Cir. 2010) (stating that "a false statement is material if it has a natural tendency to influence, or [is] capable of influencing, the decision of decisionmaking body to which it was addressed"); *United States ex rel. Winkelman v. CVS Caremark*, 2016 WL 3568145, at *8 (1st Cir. June 30, 2016) (citing *Escobar* for the proposition that the "dictionary definition comports with the common law understanding of 'material,' which focuses the relevant inquiry on whether a piece of information is sufficiently important to influence the behavior of the recipient").[3]

The Supreme Court identified a variety of factors bearing on the materiality inquiry, including whether the requirement is labeled a condition of payment, 136 S. Ct. at 2003, whether the violation goes to the "essence of the bargain," *id.* n.5 (quoting *Junius Constr. Co. v. Cohen*, 257 N.Y. 393, 400 (1931)), whether the violation is significant or "minor or insubstantial," *id.*, and whether the government took action in this or other cases when it had knowledge of similar violations, *id.* at 2003–04.  No one factor is necessarily dispositive, and a court must evaluate these, and any other relevant factors, together.  *Id*. at 1001 (*citing Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 39 (2011) (materiality cannot rest on a "single fact or occurrence as

---

[3] Numerous other courts of appeals likewise adhere to the "natural tendency to influence" test. *See, e.g.*, *United States ex rel. Feldman v. Van Gorp.*, 697 F.3d 78, 96 (2d Cir. 2012) (test for materiality "does not require evidence that a program officer relied upon the specific falsehoods proven"); *United State ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1228-29 (11th Cir. 2012) (misrepresentation is material if it has "the ability to influence the government's decision-making"); *United States ex rel. Longhi v. United States*, 575 F.3d 458, 469-70 (5th Cir. 2009) (mere potential to influence is sufficient); *United States v. Rogan*, 517 F.3d 449, 452 (7th Cir. 2008) (rejecting argument that testimony of federal officials that they would not have paid claims was necessary to establish materiality); *United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 916-17 (4th Cir. 2003) (explaining that the materiality inquiry focuses on the "potential effect of the false statement when it is made, not on the actual effect of the false statement when it is discovered").

always determinative")). Here the factors fully support the conclusion that relator has adequately alleged violations that are material.

First, the Supreme Court in *Escobar* held that express language in a statute, regulation or contract designating a provision as a condition of payment is "relevant" to, if not "automatically dispositive" of, the materiality inquiry. 136 S. Ct. at 2001, 2003. The telemarketing prohibition that is the basis of relators' claim against Hollister is one of a number of conditions of payment for durable medical equipment set forth in 42 U.S.C. § 1395m(a). *See* Third Am. Compl. (TAC) ¶ 53. Section 1395m is entitled, "Special payment rules for items furnished by DMEPOS suppliers and issuance of DMEPOS supplier billing privileges,[4] and subsection (a) is entitled "Payment for durable medical equipment." Subsection (a)(17)(A) sets forth the terms of the telemarketing prohibition, and then subsection (a)(17)(B) states unequivocally, "If a supplier knowingly contacts an individual in violation of subparagraph (A), no payment may be made under this part for any item subsequently furnished to the individual by the supplier." This statutory prohibition on payment is clear and unambiguous, and any reasonable person would "attach importance" to it in "determining a choice of action in the transaction." *Escobar*, 136 S. Ct. at 2002–03.

Hollister argues that the telemarketing restrictions are not material because 42 C.F.R. § 424.57(c) is not expressly labeled a condition of payment and two courts have previously concluded that it does not establish conditions of payment. Hollister Mem. (Doc. #169) at 8 & n.3 (citing *United States ex rel. Bierman v. Orthofix Int'l, N.V.*, 113 F. Supp. 3d 414, 426 (D. Mass. 2015) (Zobel, J.), and *United States ex rel. Williams v. Renal Care Grp., Inc.*, 696 F.3d 518, 531-32 (6th Cir. 2012)). Hollister's argument suffers from several fundamental problems.

---

[4] DMEPOS stands for durable medical equipment, prosthetics, orthotics and supplies.

To begin with, 42 C.F.R. § 424.57(c) contains a number of standards that a DMEPOS supplier must meet, including but not limited to the telemarketing prohibition. *See* 42 C.F.R. § 424.57(c)(11). Neither of the cases that Hollister cites addresses the telemarketing prohibition at issue in this case. In addition, as noted, Congress expressly enacted a statute prohibiting payment to a supplier that violates the restrictions on telemarketing, 42 U.S.C. § 1395m(a)(17)(B), and that unquestionably establishes a condition of payment. Accordingly, even if 42 C.F.R. § 424.57(c) is interpreted to establish conditions of participation, that simply reflects an agency determination to strengthen the prohibition by making it *both* a condition of participation *and* a condition of payment.

Courts have made clear that a provision can qualify as a condition of payment even if it is not expressly designated as such. *See United States v. Science Applications Intern. Corp.*, 626 F.3d 1257, 1268 (D.C. Cir. 2010); *cf. Escobar* at 2001 (Section 3729(a)(1)(A) does not limit "false or fraudulent claims" to misrepresentations about express conditions of payment.). Finally, as *Escobar* makes clear, whether a provision qualifies as a condition of payment is not dispositive and is only one factor to consider as part of the materiality inquiry. Accordingly, even if the cases cited by Hollister were relevant, they have been superceded by *Escobar*. Here, not only does the telemarketing prohibition expressly qualify as a condition of payment under 42 U.S.C. § 1395m(a)(17)(B), but the other factors identified in *Escobar* as relevant to the materiality analysis also suggest that the violations as alleged by relator are material.

Second, compliance with the telemarketing prohibition goes to the "very essence" of what the government bargains for. *See Escobar*, 136 S. Ct. at 2003 n.5 (quoting *Junius Constr. Co. v. Cohen*, 257 N.Y. 393, 400, 178 N.E. 672, 674 (1931). The statute and numerous regulations demonstrate a congressional and regulatory commitment to protect Medicare

beneficiaries from aggressive marketing activities and to ensure that beneficiaries make medical purchasing decisions based upon their own best interests, not on marketing tactics (which is something that elderly Medicare beneficiaries are acutely vulnerable to). Denial of payment, monetary penalties, and revocation of billing privileges are remedies designated by law to discourage such conduct. *See* 42 U.S.C. § 1395m(a)(17)(B); *see also* 42 U.S.C. § 1395m(a)(18) (requiring a nonparticipating supplier who violates the telemarketing prohibition to refund to the patient any amounts collected from the patient for the item, and authorizing the Secretary to apply exclusion and civil monetary sanctions if the supplier fails to do so); 42 C.F.R. § 402.1(c)(5) (authorizing civil penalties against violators of 42 U.S.C. § 1395m(a)(18)); 42 C.F.R. § 402.105(d)(2)(iii) (CMS or OIG may impose a penalty of not more than $10,000 for any DME supplier who "knowingly and willingly, in violation of [§1395m(a)(18)(A)], fail[s] to make a refund to Medicare beneficiaries for a covered service for which payment is precluded due to an unsolicited telephone contact from the supplier."); 402.107(b)(3) (a DME supplier who "knowingly and willingly, in violation of section [1395m(a)(18)(A)], fails to make a refund to Medicare beneficiaries for a covered service for which payment is precluded due to an unsolicited telephone contact from the supplier" and who is subject to civil money penalties may also be subject to an assessment for each service that was the basis for a civil money penalty); *id*. § 402.200 (authorizing exclusion against persons that violate the provisions of the Act provided in § 402.1(e), which includes violations of 42 U.S.C. § 1395m(a)(17)); *id*. § 402.200(e)(2)(i) (mandatory exclusion of persons described in 42 U.S.C. § 1395m(a)(17)(C)); *id*. § 424.57(e) ("CMS revokes a supplier's billing privileges if it is found not to meet the standards in paragraphs (b) and (c) of this section").

Third, the present case does not involve isolated violations of an insignificant contractual or regulatory term.  Rather, the Third Amended Complaint alleges facts, which if taken as true, indicate programmatic conduct occurring over a period of years – conduct which the Court has ruled was in violation of a statutory prohibition.  Accepting the relators' allegations as true, it cannot be said at this stage that the violations are "minor or insubstantial."  *See Escobar*, 136 S. Ct. at 2003.

Finally, the sufficiency of the Third Amended Complaint as to the materiality element is supported by its allegations regarding the government's past actions.  Relators allege that in March 2003, the Department of Health and Human Services, Office of Inspector General ("HHS-OIG") issued a Special Fraud Alert regarding telemarketing by DMEPOS suppliers, and issued an Updated Special Fraud Alert in January 2010.  Third Am. Compl. ¶¶ 55-56.  As alleged by the relators, the Updated Alert re-emphasized the significance of the prohibition to the Government, by, among other things, reminding DMEPOS suppliers that unless the arrangement meets one of three exceptions found in 42 U.S.C. § 1395m(a)(17)(A), unsolicited telemarketing by DMEPOS suppliers to Medicare beneficiaries is prohibited, "whether contact with a beneficiary is made by the supplier directly or by another party on the supplier's behalf."  *Id*. ¶ 56.  The Government cautioned that, "If a claim for payment is submitted for items or services generated by a prohibited solicitation, both the DMEPOS supplier and the telemarketer are potentially liable for criminal, civil, and administrative penalties for causing the filing of a false claim, as well as criminal and civil penalties for using interstate telephone calls in furtherance of a scheme to defraud."  *Id*.

To be sure, by noting the relevance of the government's actions in other contexts to the materiality determination, *Escobar* was necessarily indicating that there can be cases and

circumstances where an inquiry into the facts of such actions may become necessary. Such an inquiry cannot be carried out upon a motion to dismiss, however, and the government is making no representations here, beyond the allegations in the relators' complaint, as to the actual practices of any agency or component. On this record, the Third Amended Complaint adequately pleads that the violations were material.

> **B. If the Court Concludes the Relators Have Failed to Plead Their Claim Against Hollister With Sufficient Specificity, Any Dismissal Should Be Without Prejudice to the United States**

Under the False Claims Act, a relator files his complaint on behalf of the United States, and, once the United States has notified the court that it declines to pursue relator's allegations, relator is free to pursue them on her own. 31 U.S.C. § 3730. Under such circumstances, the United States neither files the complaint that initiated the action nor serves it on defendants. Because the United States has no part in preparing such complaints, it should not be prejudiced if a relator has failed to plead his or her allegations sufficiently. Such a dismissal does not constitute a ruling on the merits of defendants' conduct and does not mean that a better informed relator or the United States could not make out a viable claim in the future. Moreover, a dismissal with prejudice would be unfair because a relator's complaint that is broadly drafted, if dismissed with prejudice as to the United States, could improperly be argued by a defendant to have the preclusive effect of preventing future actions by the United States against the defendant for conduct that the United States did not investigate and did not know was part of relator's action. This is not in accord with the purpose of the False Claims Act *qui tam* provisions, which is assisting the United States in pursuing fraud, not hindering it, and should not be the result of the dismissal of an improperly pleaded complaint or a disqualified relator, whom the United States does not control. *See United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417

F.3d 450, 455 (5th Cir. 2005) (holding that dismissal with prejudice as to the United States was improper where basis for dismissal was failure to meet heightened pleading standard under Fed. R. Civ. P. 9(b)).  Accordingly, the United States submits that, if granted, a dismissal based on the sufficiency of relators' Third Amended Complaint should be without prejudice to the United States.

Dated:  August 19, 2016                     CARMEN M. ORTIZ

                                            United States Attorney

                                    By:     /s/ *George B. Henderson, II*
                                            George B. Henderson, II (BBO #230185)
                                            Kriss Basil (BBO #673074)
                                            Assistant U.S. Attorneys
                                            John J. Moakley U.S. Courthouse, Suite 9200
                                            1 Courthouse Way
                                            Boston, MA 02210
                                            (617) 748-3100
                                            george.henderson2@usdoj.gov
                                            kriss.basil@usdoj.gov


                              Certificate of Service

       I hereby certify that on this 19th day of August, 2016, the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.


                                    By:     /s/ *George B. Henderson, II*
                                            Assistant U.S. Attorney