## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA AND THE STATE OF CALIFORNIA, *ex rel.* KIMBERLY HERMAN, AMY LESTAGE, and KEVIN ROSEFF, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil A. No. 11-cv-12131-RWZ |
| v. | ) ) | |
| COLOPLAST CORP., *et al.*, | ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
## HOLLISTER'S PROPOSAL FOR PHASED DISCOVERY

Plaintiffs Kimberly Herman, Kevin Roseff and Amy Lestage ("Plaintiffs" or "Relators") respectfully submit this memorandum of law in opposition to Hollister's proposal for phased discovery in the parties' Joint 26(f) Statement (ECF No. 226), and addressing Plaintiffs' theory of damages on the telemarketing conspiracy claim against Hollister (Count VIII of the Third Amended Complaint, ECF No. 121).[1]

As explained in the parties' Joint Statement, the Relators believe that materiality is a red herring in this case due to the express statutory prohibition on payment of claims tainted by a telemarketing violation. 42 U.S.C. § 1395m(a)(17)(B) is not merely a condition of payment, but rather an expression by Congress that CMS may not pay a supplier's claim where a telemarketing violation has occurred. In particular, section 1395m(a)(17)(B) provides unequivocally that "*no payment may be made* under this part for any item subsequently furnished

---

[1] During the status conference on December 1, 2016, the Court invited the parties to submit papers supporting their positions within two weeks. (ECF No. 237.)

to the individual by the supplier." (emphasis added).  Put differently, it is irrelevant whether CMS would have paid claims with knowledge of telemarketing violations because it was expressly prohibited from doing so under the statutory prohibition on payment.  None of the cases cited by Hollister – including *U.S. ex rel Bierman v. Orthofix Int'l*, 113 F. Supp. 3d 414 (D. Mass. 2015) – address the statutory prohibition on payment under section 1395m(a)(17)(B); rather, they only analyze the supplier standard regulation, 42 C.F.R. § 424.57(c), which does not include an express prohibition on payment.  Phased discovery will therefore not be dispositive of the materiality issue in this case and Hollister's proposal to bifurcate discovery so that it may obtain documents and testimony from CMS will be a wasteful and unnecessary exercise that will only serve to delay this case.

Moreover, Relators concur with the Government that Hollister has misconstrued *Universal Health Svcs. v. U.S. ex rel Escobar*, 136 S. Ct. 1989 (2016) with respect to the materiality inquiry under the FCA.  (ECF No. 180.)  Even if materiality were at issue here – which Relators do not believe it is for the reasons stated above – Hollister fundamentally misconstrues the test for materiality, implying that Plaintiffs must show that CMS would *in fact* have refused to pay a claim if it knew of a telemarketing violation.  (*Id.* at 3.)  In *Escobar*, the Supreme Court reaffirmed the "natural tendency" standard for materiality under the FCA, explaining that a violation is material if, either:

> "(1) a reasonable [person] would attach importance to [it] in determining his choice of action in the transaction"; or (2) if the defendant knew or had reason to know that the recipient of the representation attaches importance to the specific matter "in determining his choice of action," even if a reasonable person would not.

136 S. Ct. at 2002-03 (*citing* Restatement (Second) of Torts § 538, at 80)).  Here, the statutory prohibition on payment is unequivocal.  There is no doubt that a reasonable person would "attach

importance" to the statutory language in determining whether or not to pay a claim tainted by a telemarketing violation.

Finally, during the status conference on December 1, 2016, the Court raised an issue concerning Plaintiffs' ability to recover damages from Hollister under the telemarketing theory that would be separate and distinct from the damages previously paid by Hollister pursuant to the settlement of the kickback claims with the government.  (ECF No. 237.)  As explained in the United States' Notice of Intervention in Part for Purposes of Settlement and Declination in Part (ECF No. 110), the government intervened in this action only with respect to Plaintiffs' "allegations that Hollister paid unlawful kickbacks to Byram in the form of the cost of cash incentives ("spiffs") to sales personnel for each new patient order for Hollister products."  (*Id.* at 2.)  The government declined to intervene as to Count X of the Second Amended Complaint (the Telephone Solicitation Prohibition conspiracy claim); that claim was expressly reserved and not released by the settlement agreement between Hollister and the United States.  (*Id.* at 3.)

If the Court compares the "Covered Conduct" outlined in Attachment A to the Settlement Agreement, it will find that the Covered Conduct settled by the United States related to allegations of marketing funds paid to Byram in exchange for new patient orders during 2007- 2012 (*i.e.* "spiffs"), and certain "catalog funding" payments paid during 2009-2014.  *See* Ex. 1, at 14-15 (Attachment A to Settlement Agreement between Hollister and the United States).  In particular, each of the spiffs included in the Covered Conduct involved a discrete campaign for a particular Hollister product (*i.e.* 2007-2008: barrier rings and strips, *see* ¶¶ 1-2; 2009-2010: deodorant and barrier rings, *see* ¶¶ 3-4; 2012: catheters, *see* ¶¶ 5-7).  That conduct is factually and legally distinct from Plaintiffs' telemarketing conspiracy allegations stated in Count X of the Second Amended Complaint (Count VIII of the Third Amended Complaint, ECF No. 121).

The measure of damages for the telemarketing conspiracy claim is the amount Medicare paid to a supplier for all claims submitted for products that were sold as a result of telemarketing violations.  *See, e.g.*, *U.S. ex rel Feldman v. van Gorp*, 697 F.3d 78, 88-89 (2d Cir. 2012) (collecting cases); *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008).  To be sure, this will require Plaintiffs to "tick-and-tie" each claim submitted by a supplier to a particular call made by Hollister on behalf of that supplier in violation of the telemarketing prohibition.  To the extent that any such claims cover products that were also tainted by spiffs during the same time period (*i.e.* barrier rings and strips, deodorant, or catheters), any such amount would be excluded from damages.  However, Hollister sells a wide variety of products in addition to those covered by the settlement with the government.  It is extremely likely that the telemarketing violations resulted in the sale of products different from, and therefore not duplicative of, the products at issue in the Covered Conduct settled by the government.  This is precisely why Plaintiffs need discovery into the telemarketing calls and the claims submitted by the suppliers as a result of the "warm transfer" process.  To postpone this vital discovery until Phase II would hinder Plaintiffs' ability to meaningfully assess the value of this case and the extent of the damages that resulted from the telemarketing violations.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Hollister's proposal to bifurcate discovery into two phases and issue a scheduling order consistent with the timeline proposed in the parties' Joint Statement (ECF No. 226 at 2-3).

Dated: December 15, 2016                    Respectfully submitted,

**Attorneys for Plaintiffs Kimberly Herman, Amy Lestage, and Kevin Roseff**

*/s/ Paul W. Shaw*
Paul W. Shaw (BBO No. 455500)
Taylor R. Neff (BBO No. 675255)
VERRILL DANA LLP
One Boston Place, Suite 1600
Boston, MA 02108
(617) 309-2600
pshaw@verrilldana.com
tneff@verrilldana.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 15, 2016, I caused a true and correct copy of the

foregoing document to be served upon all counsel of record via CM/ECF electronic filing.

*/s/ Paul W. Shaw*
Paul W. Shaw