UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA AND THE STATE OF CALIFORNIA, *ex rel.* KIMBERLY HERMAN, AMY LESTAGE, and KEVIN ROSEFF, <br><br> Plaintiffs, <br><br> vs. <br><br> SHIELD CALIFORNIA HEALTH CARE CENTER, INC. <br><br> Defendant | CIVIL ACTION NO.: 11-cv-12131 RWZ |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO SHIELD CALIFORNIA HEALTH CARE CENTER, INC.'S MOTION TO EXCLUDE**

Plaintiffs Kimberly Herman, Amy Lestage and Kevin Roseff ("Relators" or "Plaintiffs") submit this Opposition to Defendant Shield California Health Care Center, Inc.'s ("Shield") Motion to Exclude Belatedly-Disclosed Witnesses from Testifying at Trial (ECF No. 355) ("Motion to Exclude").

**INTRODUCTION**

Shield's Motion to Exclude attempts to create a problem where none exists. Shield complains that Plaintiffs' initial disclosures in this matter did not include four State of California employees whom Plaintiffs have since identified as potential witnesses who may provide testimony at trial (the "California witnesses"). It is true that Plaintiffs did not include the California witnesses in their initial disclosures. However, when it became apparent that this case would proceed to trial, *i.e.*, when the Court denied Shield's motion for summary judgment, Plaintiffs almost immediately supplemented their initial disclosures to include the California witnesses and describe their intended testimony. Plaintiffs also included the California witnesses in their expert disclosures, to further ensure that Shield was on notice of the witnesses and their

proposed testimony.

Shield does not specify any harm it has or will suffer due to the timing of Plaintiffs'
disclosures, other than to suggest that the disclosures present an intractable problem because
Shield has not deposed the California witnesses. However, Shield fails to mention that the
current scheduling order in this case extends discovery until March 1, 2019, with time allotted
for both expert and "additional" fact discovery. (See ECF 349.) Shield thus has ample
opportunity to conduct discovery regarding the California witnesses, as experts or otherwise.
The timing of Plaintiffs' disclosure of the California witnesses is therefore a non-issue.

Shield further protests that the California witnesses should not be allowed to testify as
experts. Plaintiffs included each of the California witnesses in their expert disclosures even
though some of their testimony might not qualify as expert testimony, lest Shield complain at
trial that Plaintiffs were attempting to introduce testimony from previously undisclosed experts.
And, in fact, some of the California witnesses' proposed testimony would be expert in nature.
This case involves the upper billing limit ("UBL") regulation under Medi-Cal, California's
Medicaid program, and how Shield's violation of that regulation has caused it to run afoul of
both the federal and California False Claims Acts ("FCA"). As State of California employees
involved in the administration and enforcement of the Medi-Cal program, the California
witnesses will provide specialized knowledge integral to understanding this case: the State's
interpretation of Medi-Cal laws and regulations (including the UBL regulation and its materiality
to reimbursement decisions) and how the Medi-Cal program functions.

In sum, given Shield's opportunity to conduct discovery regarding the California
witnesses and the specialized nature of their proposed testimony, the Motion to Exclude should
be denied in its entirety.

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.  The Current Scheduling Order

In its Motion to Exclude, Shield recites the trajectory of discovery in this matter.

However, Shield fails to mention that the scheduling order issued by the Court on September 11,

2018 ("Scheduling Order") immediately following the Pretrial Conference establishes the

schedule for the remaining discovery in this case and provides ongoing opportunities to depose

both expert and fact witnesses.  Specifically, the parties must conduct expert depositions by mid-

January 2019.  In addition, the parties have 45 days following the completion of expert

depositions for "all additional discovery."  ECF No. 349.  This means that all discovery in this

matter will close on March 1, 2019.

### B.  The California Witnesses

This case involves the UBL regulation promulgated by California's Department of Health

Care Services ("DHCS"), the California agency that administers the Medi-Cal program, and how

Shield has flouted that regulation by engaging in a scheme to submit artificially inflated invoice

prices for medical supplies to Medi-Cal in violation of both the federal and California FCAs.

Plaintiffs admit they did not include the California witnesses in their Rule 26(a)(1)(A) Initial

Disclosure Statement, served on September 22, 2016 ("Initial Disclosures").  ECF No. 355,

Exhibit ("Exh.") 1.  However, after the Court denied Shield's motion for summary judgment on

August 17, 2018, on September 6, 2018 Plaintiffs served on Shield a Supplemental Rule 26(a)(1)

Disclosure Statement Relating to Shield California Health Care Center, Inc. ("Supplemental

Disclosures").  ECF No. 355, Exh. 3.  In their Supplemental Disclosures, Plaintiffs included the

four California witnesses, all of whom are involved with the administration and/or enforcement

of Medi-Cal program and the UBL regulation.  The Supplemental Disclosures noted the titles of

the witnesses and indicated the topics about which they will likely testify:

1. Siobhan Franklin, Deputy Attorney General, California Attorney General's Office, Bureau of Medi-Cal Fraud and Elder Abuse.  Ms. Franklin's testimony will address Medi-Cal regulations and compliance; the trajectory of the previous lawsuit against Shield based on violations of the UBL regulation (*U.S. ex rel. Donath v. Whitestone Corp.*), including the litigation, allegations, investigation and settlement; and misrepresentations made in the filings by counsel for Shield in connection with the dispositive motions filed in this litigation.

2. Joseph Chavez, Senior Counsel, DHCS.  Mr. Chavez's testimony will address Medi-Cal regulations and compliance, specifically the UBL regulation; Medi-Cal claims submission and reimbursement processes; Medi-Cal audit and investigation processes, including what happens when DHCS is confronted with an allegation of Medi-Cal violations; whether the large rebates that Shield received from Coloplast Corp. ("Coloplast") would have been material to DHCS's decision to reimburse Shield for claims for Coloplast products; and misrepresentations made in the filings by counsel for Shield in connection with the dispositive motions filed in this litigation.

3. Pansy Watson, Chief, Medical Supplies and Enteral Nutrition Benefits Branch, Pharmacy Benefits Division, DHCS.  Ms. Watson's testimony will address Medi-Cal regulations and compliance, specifically the UBL regulation; Medi-Cal reimbursement processes; Medi-Cal audit processes; Shield's submission of claims to, and reimbursements paid by, Medi-Cal; whether the large rebates that Shield received from Coloplast would have been material to DHCS's decision to reimburse Shield for claims for Coloplast products.

4. Nicholas Paul, Supervising Deputy Attorney General, California Attorney General's Office, Medicaid Fraud Control Unit.  Mr. Paul's testimony will address Medi-Cal laws and regulations, specifically the UBL regulation; and Medi-Cal audit processes.

Lest one or more of the California witnesses testify at trial and Shield complain that

Plaintiffs were attempting to introduce improper expert testimony, the Supplemental Disclosures

further indicated that "[t]hese fact witnesses may provide expert testimony as non-retained or

non-specially employed expert witnesses pursuant to Fed.R.Civ.P. 26(a)(2)(A) and (C), and

pursuant to Plaintiffs' Disclosure of Expert Witnesses."  Accordingly, when Plaintiffs served

their Expert Witness Disclosures on Shield on November 1, 2018 ("Expert Disclosures"), they

included the four California witnesses.  ECF No. 355, Exh. 4.  The Expert Disclosures identified

the same topics for each witness as the Supplemental Disclosures and provided greater detail

about the nature of the proposed testimony, noting that, for each witness, some of his or her

testimony "might be construed as expert opinion."

## ANALYSIS

### I.  THE CALIFORNIA WITNESSES MAY PROPERLY TESTIFY.

#### A.  Plaintiffs' Disclosure of the California Witnesses Was Timely.

First, as far as expert testimony goes, Plaintiffs included the California witnesses in their

Expert Disclosures, which Plaintiffs served in compliance with the Scheduling Order.  The

disclosure regarding the California witnesses' expert testimony is therefore unquestionably

timely.

Second, in terms of fact testimony, Rule 26(e)(1) of the Federal Rules of Civil Procedure

requires a party to supplement its disclosures and discovery responses "in a timely manner if the

party learns that in some material respect the disclosure or response is incomplete or incorrect,

and if the additional or corrective information has not otherwise been made known to the other

parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1); *cf. Ferrara &*

*DiMercurio v. St. Paul Mercury Ins. Co.*, 240 F.3d 1, 10 (1st Cir. 2001) (expert testimony

admitted where expert was designated three months before trial, even though designating party

failed to supplement interrogatory answers and expert reports to include newly designated

expert).

Shield fails to account for the fact that Plaintiffs disclosed the California witnesses well

in advance of trial[1] and while it can conduct "additional discovery" pursuant to the Scheduling

---

[1] Additionally, with respect to both Pansy Watson and Deputy Attorney General Siobhan Franklin, Shield was
provided with detailed declarations in connection with the summary judgment filings in February/March 2018.  *See*

Order.  When Shield's summary judgment motion was denied, meaning the case would proceed to trial, Plaintiffs quickly served the Supplemental Disclosures on Shield.  Plaintiffs have therefore satisfied Rule 26(e)(1)'s requirement that a party augment an initial disclosure in a timely manner.

### B.  Even If Timeliness Were an Issue, Shield Has Not Been and Will Not Be Harmed by the Disclosure.

Even assuming that timeliness is an issue, Rule 37(c)(1) and First Circuit jurisprudence provide potential remedies for a party's failure to make or supplement disclosures in a timely manner, and provide that a court has broad discretion in fashioning remedies for untimely disclosures.  *See* Fed. R. Civ. P. 37(c)(1); *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 77-78 (1st Cir. 2009).  Under Rule 37(c)(1), courts should exclude evidence only when a late disclosure is neither substantially justified nor harmless.  *See Botelho v. Nordic Fisheries, Inc.*, No. 15-11916-FDS, 2017 WL 4553407, at *5 (D. Mass. Oct. 12, 2017).  Indeed, precluding evidence based on an alleged failure to comply with Rule 26(a) or 26(e) is an "onerous sanction" that a court need not impose.  *See id.* (noting that discretion exists even where Rule 37(c)(1) appears to require mandatory preclusion).

In assessing potential harm, courts have found no harm when a complaining party is able to overcome the surprise and potential prejudice associated with a late disclosure, in particular by deposing the complained-of witnesses.  *See Cabi v. Boston Children's Hosp.*, No. 15-cv-12306-DJC, 2017 WL 4038393, at *2 (D. Mass. Sep. 13, 2017) (late-filed expert rebuttal report not stricken where opposing party had "opportunity to fully question" expert regarding at-issue rebuttal report and therefore did not suffer harm or prejudice); *see also Williams v. City of*

---

ECF Nos. 312, 313 and 326.

*Boston*, No. 10-cv-10131-PBS, 2012 WL 3260261, at *5 (D. Mass. Aug. 7, 2012) (opportunity to depose late-disclosed affiant mitigated potential prejudice to party complaining of untimely disclosure). Conversely, where a party is genuinely unfairly surprised, such as by a last minute change in theory of liability when trial is "imminent," a court is more likely to find prejudice and preclude the offending evidence. *See Macaulay v. Anas*, 321 F.3d 45, 50-53 (1st Cir. 2003) (upholding preclusion of expert testimony that introduced new theory of liability less than two weeks prior to then-scheduled trial date).

The Motion to Exclude simply regurgitates Shield's earlier arguments made in February 2018 regarding Plaintiffs' failure to include Ms. Watson in its Initial Disclosures.[2] In doing so, Shield fails to articulate any prejudice that it has suffered or will suffer based on the timing of Plaintiffs' disclosures. The Scheduling Order provides that expert depositions must take place between December 1, 2018, and January 15, 2019, and that the parties have a subsequent 45 days for "additional discovery" following the completion of expert depositions, or until March 1, 2019. This means that Shield has a month and a half to depose the California witnesses as experts or, if they are not deemed to be experts, a month and a half to depose the California witnesses as fact witnesses. Shield cannot argue, and indeed it has not argued, that it has been or will be harmed by an inability to develop its defense by deposing the California witnesses prior to trial.[3]

---

[2] Instead of raising a novel and genuine issue, Shield is attempting to extend the complaint it lodged during the summary judgment briefing in this matter, that Plaintiffs had not included Ms. Watson in their Initial Disclosures, but submitted a declaration from Ms. Watson in opposition to Shield's motion for summary judgment. *See* Shield Motion to Strike and Exclude, ECF No. 317. The situation here is entirely different, given that Plaintiffs have now detailed the California witnesses and their testimony (twice), with ample opportunity for Shield to depose the California witnesses prior to trial during the still-open discovery period. Shield suggests that the Court, in its summary judgment decision, ruled generally that the California witnesses may not testify at trial; however, the Court in its summary judgment opinion simply stated it would not consider Ms. Watson's declaration in deciding the summary judgment motion; the Court did not address her potential testimony, or anyone else's, at trial. ECF No. 341, at 11-12 n. 5.

[3] Shield's apparent argument that it needed to depose the California witnesses prior to the summary judgment

In addressing a late disclosure, courts consider various factors including: the history of the litigation, the need for the challenged evidence, any justification for the late disclosure, and the opponent's ability to overcome its adverse effects.  *See Glass Dimensions, Inc. ex rel. Glass Dimensions, Inc. Profit Sharing Plan & Trust v. State St. Bank & Trust Co.*, 290 F.R.D. 11, 18 (D. Mass. 2013).  Courts also consider the impact of the late disclosure on their dockets. *Botelho*, 2017 WL 4553407, at *5 (citing *Glass Dimensions*, 290 F.R.D. at 17); *see also Esposito*, 590 F.3d at 78.  In addition to Shield's clear ability to eliminate any adverse effects of the late disclosure by deposing the California witnesses, the other factors favor Plaintiffs as well. First, Plaintiffs do not have a history of bad conduct in this litigation; instead, Plaintiffs' failure to include the California witnesses in their Initial Disclosures was a one-time "failing," which Plaintiffs remedied with their Supplemental Disclosures as soon as it became clear that this case would proceed.  *See Esposito*, 590 F.3d at 79.  Second, as the materiality of the alleged violation of the UBL regulation is an element of Plaintiffs' FCA claim, Plaintiffs have great need for the California witnesses' testimony regarding the materiality of Shield's conduct to Medi-Cal's decision to pay the claims containing the inflated invoice prices.  Finally, any additional discovery regarding the California witnesses will not impact the court's docket, as the Scheduling Order already allows three months for Shield to depose the California witnesses as experts and/or conduct "additional discovery" regarding them as fact witnesses.

## II.  THE CALIFORNIA WITNESSES ARE QUALIFIED TO PROVIDE EXPERT TESTIMONY.

As indicated in their Supplemental Disclosures and Expert Disclosures, Plaintiffs do not

---

briefing is murky.  As noted, the Court decided the summary judgment motion without relying on Ms. Watson's declaration.  It is difficult to imagine that deposition testimony from any of the California witnesses would have yielded a different summary judgment result for Shield.  Also, deposing the California witnesses would not entail significant travel or great expense for Shield, as the California witnesses, Shield, and Shield's counsel are all in California.

necessarily intend to rely on the California witnesses for expert testimony.  However, to prevent

Shield from later complaining that one or more of the California witnesses is testifying as a

previously unidentified expert, Plaintiffs elected to be overly forthcoming about these witnesses

and their intended testimony by including each in Plaintiffs' Disclosure of Expert Witnesses

(ECF No. 355, Ex. 4).  That said, each of the California witnesses is qualified to testify as an

expert on certain identified matters.

      Federal Rule of Evidence 702 permits qualified experts to testify as witnesses if their

expertise will help the jury understand evidence or determine facts in issue.  Fed. R. Evid. 702.

As stated in the Advisory Committee Notes to Rule 702:

> Whether the situation is a proper one for the use of expert testimony is to be
> determined on the basis of assisting the trier.  "There is no more certain test for de-
> termining when experts may be used than the common sense inquiry whether the
> untrained layman would be qualified to determine intelligently and to the best pos-
> sible degree the particular issue without enlightenment from those having a
> specialized understanding of the subject involved in the dispute." (Citation omitted.)

      The First Circuit has articulated a three-part test for expert testimony:  (1) the proposed

expert must be qualified testify as an expert; (2) the expert's testimony must concern scientific,

technical, or other specialized knowledge; and (3) the testimony must assist a trier of fact to

understand the evidence or to determine a fact in issue.  *U.S. ex rel. Banigan v. Organon USA

Inc.*, No. 07-12153-RWZ, 2016 WL 6571269, at *2 (Zobel, J.) (citing *U.S. v. Shay*, 57 F.3d 126,

132 (1st Cir. 1995)).  Aspects of the proposed testimony of each of California witnesses meet

this standard, as follows:

1.  Siobhan Franklin is a Deputy Attorney General in the California Attorney General's
    Office, Bureau of Medi-Cal Fraud and Elder Abuse.  As a result of her position, she
    has specialized knowledge regarding Medi-Cal regulations and compliance, as well as
    DHCS audit processes.  Testimony regarding those issues will assist the trier of fact
    in understanding how DHCS implements the Medi-Cal program and reimburses
    providers such as Shield.

2.  Joseph Chavez is Senior Counsel at DHCS.  Mr. Chavez has specialized knowledge

regarding Medi-Cal regulations—including DHCS's interpretation of the UBL regulation—and compliance, as well as DHCS claims submission, reimbursement, audit, and investigation processes.  Mr. Chavez additionally has specialized knowledge regarding the materiality of the large quarterly rebates that Shield received from Coloplast to DHCS's decision to pay Shield's claims for Coloplast products.  Testimony regarding those issues will assist the trier of fact in understanding how the Medi-Cal program functions, how DHCS interprets the UBL regulation, and whether DHCS would have reimbursed Shield for Coloplast claims if DHCS had known of the large rebates Shield received from Coloplast.

3. Pansy Watson is the Chief of DHCS's Medical Supplies and Enteral Nutrition Benefits Branch, Pharmacy Benefits Division.  Similar to Mr. Chavez, she has specialized knowledge regarding Medi-Cal regulations—including DHCS's interpretation of the UBL regulation—and compliance, as well as DHCS reimbursement and audit processes.  Ms. Watson also has specialized knowledge regarding the materiality of the large quarterly rebates that Shield received from Coloplast to DHCS's decision to pay Shield's claims for Coloplast products.  Again, testimony regarding those issues will assist the trier of fact in understanding how the Medi-Cal program functions, how DHCS interprets the UBL regulation, and whether DHCS would have reimbursed Shield for Coloplast claims if DHCS had known of the large rebates Shield received from Coloplast.

4. Nicholas Paul is a Supervising Deputy Attorney General in the California Attorney General's Office, Medicaid Fraud Control Unit.  Like Ms. Watson and Mr. Chavez, Mr. Paul has specialized knowledge regarding Medi-Cal regulations—including DHCS's interpretation of the UBL regulation—and compliance, as well as DHCS audit processes.  Mr. Paul's testimony regarding those issues will assist the trier of fact in understanding how the Medi-Cal program functions and how DHCS interprets the UBL regulation.

Finally, Shield suggests that testimony regarding the UBL regulation would seek to interpret the law and thus usurp the province of the judge.  Shield misunderstands the relevant case law.  A court might not allow an expert to testify regarding what a certain law or regulation means or to apply the relevant law or regulation to the facts of the case.  *See, e.g.*, *Pelletier v. Main St. Textiles, LP*, 470 F.3d 48, 55 (1st Cir. 2006).  However, courts do allow experts to testify regarding how a particular person or entity interprets a particular law or regulation.  *Id.* And, of relevance here, courts allow experts to testify in FCA cases regarding whether a defendant's actions were material to the government's decision to pay the defendant.  For example, the First Circuit, in an FCA case, reversed the district court's granting of summary

judgment due in part to the district court's failure to consider expert testimony regarding whether certain statements made by the defendant were material to the government's funding decisions. *U.S. ex rel. Jones v. Brigham & Women's Hosp.*, 678 F.3d 72, 80, 93-94 (1st Cir. 2012); *see also U.S. ex rel Salters v. Amer. Family Care, Inc.*, 262 F. Supp. 3d 1266, 1275 (N.D. Ala. 2017) (relying on expert opinions regarding materiality in FCA summary judgment decision); *U.S. ex rel. Johnson v. Golden Gate Nat'l Senior Care, L.L.C.*, 223 F. Supp. 3d 882, 908-10 (D. Minn. 2016) (allowing expert testimony regarding government payment practices as relevant to materiality inquiry in FCA case).

The California witnesses will not testify regarding the ultimate issue here, whether Shield violated the FCA.  Instead, the California witnesses' specialized knowledge falls into two categories of information central to this case:  Medi-Cal laws and regulations (including regulatory compliance, the UBL regulation, and its materiality to DHCS's reimbursement decisions) and how the Medi-Cal program functions (including claims submission, reimbursement, audits, and investigations).  Understanding those areas requires specialized knowledge from California State employees intimately familiar with the Medi-Cal program. Like the experts in *Jones*, the California witnesses will provide exactly that knowledge, meaning they should be allowed to testify as experts.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, Plaintiffs respectfully request that the Court deny Shield's Motion to Exclude.

DATED: November 28, 2018                    Respectfully submitted,

                                            **Counsel for Plaintiffs/Relators Kimberly**
                                            **Herman, Amy Lestage and Kevin Roseff**

                                            */s/ Paul W. Shaw*
                                            Paul W. Shaw (BBO No. 455500)
                                            Cecilie H. MacIntyre (admitted *pro hac vice*)
                                            VERRILL DANA LLP
                                            One Boston Place, Suite 1600
                                            Boston, MA 02108
                                            (617) 309-2600
                                            pshaw@verrilldana.com
                                            cmacintyre@verrilldana.com


## CERTIFICATE OF SERVICE


        I hereby certify that on November 28, 2018, I caused a true and accurate copy of the
foregoing document to be filed with the Clerk of Court using the CM/ECF system which will
send notification of such filing to all counsel of record.


                                            */s/ Paul W. Shaw*
                                            Paul W. Shaw

12313195_1