## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA AND THE STATE OF CALIFORNIA, *ex rel.* KIMBERLY HERMAN, AMY LESTAGE, and KEVIN ROSEFF,<br><br>        Plaintiffs<br><br>    vs.<br><br>COLOPLAST CORP. *et al.*,<br><br>        Defendants. | **CIVIL ACTION NO.:**<br>**11-cv-12131 RWZ** |

## PLAINTIFF AMY LESTAGE'S TRIAL BRIEF
## PURSUANT TO LOCAL RULE 16.5(f)

Plaintiff Amy Lestage submits this trial brief pursuant to Local Rule 16.5(f) and this Court's Order of February 1, 2019.  This is a False Claims Act retaliation lawsuit brought by Ms. Lestage against her current employer Coloplast Corp.

The case is brought under 31 U.S.C.A. § 3730(h) and is premised on the allegation that Coloplast retaliated against Plaintiff following her filing a *qui tam* action against Coloplast as well as a number of Coloplast's distributors.  Plaintiff initially claimed the retaliation in the Second Amended Complaint that was filed June 1, 2015 (ECF No. 40).  Following the filing of Plaintiff's Third Amended Complaint, on May 20, 2016, Coloplast filed two counter-claims against Plaintiff alleging breach of the duty of loyalty and breach of contract.  Coloplast's counsel has indicated that they will be dismissing the claims prior to trial. The questions presented for trial are: (1) Whether Defendant retaliated against Plaintiff because of her conduct

in filing the False Claims Act action and, if so, (2) whether Plaintiff suffered any damages, and, if so, (3) the amount of damages sustained.

## BASIC FACTS

The testimony will show that on or about December 2, 2011, Plaintiff and two other relators (Kimberly Herman and Kevin Roseff) filed an action under the False Claims Act alleging that Coloplast Corp. paid kickbacks to certain durable medical equipment suppliers causing Defendant and co-conspirators to submit false or fraudulent claims to federal health care programs. The filing of this False Claims Act was protected conduct under 31 U.S.C.A. § 3730. Plaintiff, at the time and currently, is a Key Account Manager ("KAM") for Coloplast.  In this position, Plaintiff helps to manage Coloplast's contractual relationships with distributors and dealers of Coloplast's medical product devices.  In August 2014, the docket of the False Claims Act matter was unsealed and on November 20, 2014, an Amended Complaint was publicly filed. The evidence will show that at the time the Complaint was unsealed Plaintiff was the highest-paid KAM at Coloplast.

On December 19, 2014, the CEO of one of the accounts Plaintiff managed, Byram Healthcare, e-mailed a letter to Edmond Veome, Coloplast's then-president, requesting that Coloplast "provide Byram Healthcare with a different account representative" and stating that it "no longer wish[ed] to work with Amy Lestage regarding [their] business together."  Following receipt of this letter, on December 23, 2014, Coloplast placed Ms. Lestage "on an indefinite, paid administrative leave . . . while [it] investigated [Byram's demand to remove her from its account]."  Plaintiff maintains that while Defendant used the term "paid administrative leave," this action was effectively a suspension in violation of § 3730(h).

Mr. Veome has previously testified that he learned of Ms. Lestage's involvement in the whistleblower action in "December 2014." Additionally, when asked whether he was aware that Ms. Lestage was a whistleblower against Coloplast at the time the decision was made to suspend her, Mr. Veome testified that it "all happened in the *same time frame*." (emphasis added). Furthermore, when Mr. Veome testified about the decision to suspend Ms. Lestage, he stated:

> [S]ince we needed to take [Ms. Lestage] off the account, we determined that it was in the best interests to put her on an administrative leave. Subsequently we did find out about the complaint, and to the best of our knowledge together we decided it was best to move forward with that.

Morten Hansen, Ms. Lestage's then-direct supervisor, further testified that he learned of Ms. Lestage's involvement on or about the same time as Coloplast was making the decision to suspend Ms. Lestage.  Plaintiff expects this evidence to establish that two of the decision-makers with respect to Ms. Lestage's suspension knew of her protected conduct when they decided to suspend her and infer that Coloplast knew of the behavior and suspended her as a result of her protected conduct.

On Friday, January 15, 2016, after having virtually no communication with her for almost thirteen months, Coloplast demanded that Ms. Lestage return to work on Monday, January 25, 2016. Ms. Lestage had given birth to a son on November 24, 2015, and without adequate childcare arrangements, Ms. Lestage was unable to return to work on effectively 5 days' notice. Therefore, Ms. Lestage requested and was granted twelve weeks of leave under the FMLA. Ms. Lestage returned to work on April 12, 2016.  Her two primary accounts, Byram and ABC Home Medical, were not returned to her. Instead, Mr. Hansen assigned Ms. Lestage four accounts with smaller growth potential and/or no obvious prospects for growth. These new accounts, as well as other similar small growth accounts, have left Ms. Lestage unable to meet her targets and therefore ineligible for the level of commissions she earned prior to her

suspension. Because of these low-growth accounts, Plaintiff's current earning capacity and future loss of earnings is significant.

As a result of Coloplast's retaliation, Ms. Lestage has experienced and continues to experience lost back pay in the amount of $238,541 (exclusive of interest), as well as other special damages including deprivation of professional and career opportunities resulting in future loss of earnings of $1,043,939.00, pain and suffering, litigation costs, and attorneys' fees..

## Legal Analysis

The False Claims Act makes it unlawful for an employer to discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee with respect to her terms and conditions of employment because the employee engaged in lawful acts in furtherance of a False Claims Act action.  31 U.S.C. § 3730(h)(1). Congress enacted this provision to prevent companies from discouraging potential relators from coming forward with knowledge of their employer's wrongdoing. *Harrington v. Aggregate Indus. Ne. Region, Inc.*, 668 F.3d 25, 30 (1st Cir. 2012).

In order to set forth a *prima facie* case of retaliation under the False Claims Act, a plaintiff must "show that (i) [s]he was engaged in conduct protected under the FCA; (ii) the employer had knowledge of this conduct; and (iii) the employer retaliated against the employee because of this conduct." *Harrington*, 668 F.3d at 31. Once the plaintiff has set forth her *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the defendant does so, the burden shifts back to the plaintiff to show that the reason proffered by the defendant is a pretext to mask retaliation. *Id.*

The False Claims Act expressly declares suspending an employee because of his or her protected conduct unlawful. 31 U.S.C. § 3730(h)(1) (stating an employee is entitled to relief if

that employee is "*suspended . . .* because of lawful acts done by the employee." (emphasis added)). The fact that an employee is paid during the suspension does not make it any less unlawful. "Suspension, regardless of whether it is paid, is adverse to the employee in and of itself. It is punitive in nature and at a minimum becomes part of one's permanent employment record, affecting one's ability for advancement, or to find other future employment, or gaining valuable job experience." *Mosunic v. Nestle Prepared Foods Co.*, No. 15-cv-380, 2017 WL 3531465, at *3 (D.R.I. Aug. 16, 2017). Numerous courts have recognized that loss of opportunities to gain job experience and exclusion from career-building work, including when such loss of opportunity results from a paid suspension, is an adverse employment action. *Dahlia v. Rodriquez*, 735 F.3d 1060, 1078 (9th Cir. 2013); *Kessler v. Riccardi*, 363 Fed. App'x 350, 362 (6th Cir. 2010). Additionally, "the general stigma resulting from placement on administrative leave" is reasonably likely to deter employees from engaging in protected activity and constitutes an adverse action. *Dahlia*, 735 F.3d at 1078. A suspension with pay is therefore an adverse action in and of itself. *Cf. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 55 (2006) (stating that an indefinite suspension could well act as a deterrent to the filing of a discrimination complaint, and therefore constitute a materially adverse action, even if the suspended employee eventually receives backpay).

Further, disadvantageous transfers or work assignments, especially where they have the potential to impact an employee's pay, constitute materially adverse employment actions. *Gu v. Boston Police Dep't*, 312 F.3d 6, 14 (1st Cir. 2002). Numerous courts have held that assigning an employee a lower performing territory or accounts constitutes an adverse action. *See, e.g.*, *McArdle v. Dell Prods., L.P.*, 293 Fed. App'x 331, 337-38 (5th Cir. 2008) (stating the plaintiff suffered an adverse action where a single lucrative and desirable account of his was taken away

and replaced with several less profitable accounts); *Richmond v. Gen. Nutrition Ctrs.*, No. 08-cv-3577, 2011 WL 2493527, *10 (S.D.N.Y. June 22, 2011) (holding that a jury could find the plaintiff suffered an adverse action when he was transferred to a store with a lower volume of sales, resulting in a loss of potential commissions); *see also Simas v. First Citizens' Fed. Credit Union*, 170 F.3d 37, 50 (1st Cir. 1999) (finding a jury issue as to whether taking away the plaintiff's largest account was an adverse action).

DATED:  April 1, 2019                     Respectfully submitted,

                                          **Counsel for Plaintiff Amy Lestage**

                                          */s/ Tawny L. Alvarez*
                                          Tawny L. Alvarez (BBO No. 672255)
                                          Paul W. Shaw (BBO No. 455500)
                                          VERRILL DANA LLP
                                          One Boston Place, Suite 1600
                                          Boston, MA 02108
                                          (617) 309-2600
                                          pshaw@verrilldana.com
                                          talvarez@verrilldana.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2019, I caused a true and accurate copy of the foregoing document to be filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                          */s/ Tawny L. Alvarez*
                                          Tawny L. Alvarez