**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA AND THE STATE OF CALIFORNIA, *ex rel.* KIMBERLY HERMAN, AMY LESTAGE, and KEVIN ROSEFF, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 11-cv-12131-RWZ |
| v. | ) ) | |
| COLOPLAST A/S, COLOPLAST CORP., HOLLISTER INC., 180 MEDICAL, INC., A-MED HEALTH CARE CENTER, BYRAM HEALTHCARE CENTERS, INC., CCS MEDICAL, INC., LIBERATOR MEDICAL SUPPLY, INC., RGH ENTERPRISES, INC. d/b/a EDGEPARK MEDICAL SUPPLIES, and SHIELD CALIFORNIA HEALTH CARE CENTER, INC., | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

Plaintiff, Amy Lestage, by and through undersigned counsel, respectfully submits the

below jury instructions for the Court's consideration.

## 1.      INTRODUCTION

Now that you have heard the evidence and the argument, it is my duty to instruct you about the applicable law. It is your duty to follow the law as I state it and to apply it to the facts as you find them from the evidence in the case. Do not single out one instruction as stating the law, but consider the instructions as a whole. You are not to be concerned about the wisdom of any rule of law stated by me. You must follow and apply the law.

Nothing I say in these instructions indicates that I have any opinion about the facts. You, not I, have the duty to determine the facts.

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice or public opinion. All parties expect that you will carefully and impartially consider all of the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

**<u>Source/Authority:</u>**

3 O'Malley, Grenig, & Lee, Federal Jury Practice and Instructions § 103.01 (5th ed. 2000).

## 2.      BURDEN OF PROOF

The Plaintiff has the burden in a civil action, such as this, to prove her case by a preponderance of the evidence. If the Plaintiff has failed to establish her claim by a preponderance of the evidence, you should find for the Defendant Coloplast.

"Establish by a preponderance of the evidence" means to prove that something is more likely so than not so. In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds a belief that what is sought to be proved is more likely true than not true. This standard does not require proof of absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have introduced them.

**Source/Authority:**

Adapted from 3 O'Malley, Grenig, & Lee, Federal Jury Practice and Instructions § 104.01 (5th ed. 2000).

### 3.      EVIDENCE IN THE CASE

Unless you are otherwise instructed, the evidence in the case consists of the sworn testimony of the witnesses regardless of who called the witnesses, all exhibits received in evidence regardless of who may have introduced them, and all facts and events that may have been admitted or stipulated to.

Statements and arguments by the lawyers are not evidence in the case. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. However, when the lawyers on both sides stipulate or agree on the existence of a fact, you must, unless otherwise instructed, accept the stipulation and regard that fact as proved.

Any evidence to which I have sustained an objection and evidence that I have ordered stricken must be entirely disregarded.

**Source/Authority:**

3 O'Malley, Grenig, & Lee, Federal Jury Practice and Instructions § 103.30 (5th ed. 2000).

## 4.    INFERENCES

You are to consider only the evidence in the case.   You are not, however, limited to the statements of the witnesses.  In other words, you are not limited to what you see and hear as the witnesses testify. You may draw from the facts that you find have been proved such reasonable inferences as seem justified in light of your experience.

"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.

**Source/Authority:**

3 O'Malley, Grenig, & Lee, Federal Jury Practice and Instructions § 104.20 (5th ed. 2000).

5.        **CREDIBILITY OF WITNESSES**

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of the witnesses, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief. Consider each witness's intelligence, motive and state of mind, and demeanor while testifying.

Consider the witness's ability to observe the matters as to which the witness has testified, and whether the witness impresses you as having an accurate recollection of these matters. Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

In addition, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses or even one witness as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

**Source/Authority:**

3 O'Malley, Grenig, & Lee, Federal Jury Practice and Instructions § 105.01 (5th ed. 2000).

### 6.   EXPERT WITNESSES

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. An exception to this rule exists for "expert witnesses." An expert witness is a person who, by education and experience has become expert in some art, science, profession, or calling. Expert witnesses may state their opinions as to matters in which they profess to be an expert, and may also state their reasons for their opinions.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves. If you should decide that the opinion of an expert witness is not based on sufficient education, experience or specialized knowledge, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely.

It is entirely proper for counsel to attack the credibility of expert witnesses and the reliability of their opinions based on evidence of bias, financial incentive, or lack of independence.

That one party chooses to present more experts than another party does not mean that their opinions are more widely accepted than the party that chooses to call fewer experts.

**Source/Authority:**

3 O'Malley, Grenig, & Lee, Federal Jury Practice and Instructions § 104.40 (5th ed. 2000).

### 7.     DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.

The deposition of Neel Vadhan was taken on November 17, 2016.  The deposition of Perry Bernocchi was taken on November 18, 2016.  The deposition of Nicholas Pedersen was taken on March 16, 2017.  You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

**Authority:**

9th Cir. Manual of Model Civil Jury Instructions § 2.4 (2007).

## 8.      IMPEACHMENT

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something that is inconsistent with the witness's present testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness's other testimony and you may reject all the testimony of that witness or give it such credibility as you think it deserves.

**Source/Authority:**

3 O'Malley, Grenig, & Lee, *Federal Jury Practice and Instructions* § 105.04 (5th ed. 2000)

## 9.    LIMITED CHARACTER OF CASE

To encourage whistleblowers, the False Claims Act contains a specific provision, 31 U.S.C. § 3730(h), to provide protection for those who pursue or contribute to *qui tam* actions. 31 U.S.C. § 3730(h), the False Claims Act anti-retaliation provision, states:

Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

This trial concerns a very limited issue – whether the Plaintiff, Amy Lestage was suspended, harassed, or in any other manner discriminated against in the terms and conditions of employment by Coloplast Corp. in retaliation for having engaged in "protected activity," that is, in retaliation for reporting concerns about possible fraud upon the government by Coloplast. There is no claim in this case against Coloplast for actually committing fraud against the government.  You must focus solely on the issue before you, uninfluenced by any speculation you may have about issues that are not before you.


**Source/Authority:**

*United States ex. Rel. McKenzie v. BellSouth Telecomm. Inc.,* 123 F.3d 935, 943 (6th Cir. 1997), *cert. denied,* 522 U.S. 1077 (1998).

## 10.    STIPULATIONS BY PLAINTIFF AND DEFENDANT

Amy Lestage claims that Coloplast retaliated against her in violation of the anti-retaliation provisions of the False Claims Act.  Coloplast claims that it did not retaliate or take any action against Amy Lestage in violation of the False Claims Act.

In this case the parties have agreed to be bound by certain facts.  This is called a stipulation.  A stipulation is an agreement between the parties concerning some fact, which you as the jury are bound to accept as fact during your deliberations.

1.    Coloplast is a medical device company that develops ostomy, continence, wound and skin care products.

2.    Plaintiff began working at Coloplast in 2004 as a sales and services representative.

3.    In or about 2006, Ms. Lestage was promoted by Coloplast from her position as a sales and services representative to the position of territory manager.

4.    In or about February 2010, Ms. Lestage was promoted by Coloplast to the position of distribution account manager.

5.    In or about 2011, Ms. Lestage became a key account manager ("KAM") with Coloplast.

6.    KAMs are responsible for selling Coloplast's medical device products to distributors and dealers, and managing the contractual relationships.

7.    KAMs are responsible for servicing customer accounts and growing the key customer's business with Coloplast.

8.    KAMs' annual compensation is made up of a base salary and a commission. Commissions are based upon the percentage of growth of each account in the KAM's portfolio,

rather than total sales revenue. In addition to the growth of accounts in each KAM's portfolio, commissions are also based on the total performance of the Coloplast U.S. organization.

9.      For the fiscal years ending September 30, 2013 (FY 12/13) and September 30, 2014 (FY 13/14), Ms. Lestage earned the highest amount of commissions of the KAMs at Coloplast.

10.     Based on her performance during FY 13/14, Ms. Lestage was awarded the President's Circle trip by Coloplast.

11.     Ms. Lestage and two former employees of Coloplast ("Relators") filed a False Claims Act *qui tam* action against Coloplast and several other entities, including Byram Healthcare ("Byram") on December 2, 2011.

12.     Byram is a disposable medical supply delivery company and is one of Coloplast's key accounts. Byram purchases and then distributes Coloplast's products such as ostomy care appliances, urinary catheters, and advanced wound care products to end users in the United States, and has worked with Coloplast for more than ten years.

13.     The complaint in the *qui tam* action was originally filed under seal.

14.     Shortly thereafter, Plaintiff raised concerns with Coloplast in December 2014 that no one at Byram was responding to her multiple emails and phone calls.

15.     Perry Bernocchi is the CEO of Byram Healthcare and has held that position since approximately 2008.

16.     On Friday, December 19, 2014, Mr. Bernocchi, on behalf of Byram, sent Edmond Veome a letter by e-mail requesting that Coloplast assign a different account representative to Byram as Byram no longer wished to work with Ms. Lestage without providing any explanation as to the reason for the request.

17.     Until May 2018, Edmond Veome was the Senior Vice President of Region North America for Coloplast and had held that position since 2014.

18.     Mr. Veome received the e-mail from Mr. Bernocchi on December 19, 2014.

19.     Mr. Veome also shared Mr. Bernocchi's email with Morten Hansen on or about December 19, 2014.

20.     Mr. Hansen was and remains the Vice President of Channel Sales and Marketing at Coloplast, and until January 2019 was Ms. Lestage's direct supervisor.

21.     After receiving the letter from Byram, Coloplast learned of Ms. Lestage's involvement in the *qui tam* action.

22.     Coloplast placed Ms. Lestage on a [leave][1] in response to Byram's request to have her removed from its account.

23.     Mr. Pedersen was not involved in the decision-making process regarding Ms. Lestage's [leave] and was instead informed that Coloplast was placing her on a [leave]. Coloplast placed Ms. Lestage on a [leave] on December 23, 2014. This action was communicated to Ms. Lestage via a phone call from Mr. Hansen and Mr. Pedersen, with subsequent written communications from Human Resources.

24.     Following Ms. Lestage being placed on a [leave], Mr. Hansen took responsibility in the short-term for the maintenance of Ms. Lestage's accounts.

25.     Coloplast communicated the terms regarding Ms. Lestage's return to work through counsel in January 2016.

26.     Following notice from Coloplast that she was to return to work in January 2016,

---

[1] The parties dispute whether Ms. Lestage's time away from work is properly characterized as a "paid leave of absence" or a "suspension."

Ms. Lestage requested and was granted twelve weeks of FMLA leave.

27.    Ms. Lestage returned to work on April 12, 2016.

**Source:**

Joint Pretrial Memorandum, ECF 393, at pp. 3-6.

## 11.   ELEMENTS OF THE CAUSE OF ACTION

Plaintiff accuses Defendant of violating Federal law by retaliating against her for engaging in protected activities.  Ms. Lestage must prove these items either directly or indirectly.

Direct evidence of retaliation is evidence of remarks or actions that, if believed, would directly prove that Ms. Lestage's protected activity was a motivating factor in Coloplast's treatment of Ms. Lestage. Indirect or circumstantial evidence would include proof of a set of circumstances that would allow one to reasonably believe that Ms. Lestage's protected activity was a motivating factor in Coloplast's treatment of her.

I will now instruct you on the elements of retaliation under applicable Federal law.

To prevail on her claim of retaliation Plaintiff Amy Lestage must establish by a preponderance of the evidence the following three elements: (1) that Amy Lestage engaged in "protected activity," (2) that Coloplast knew that Amy Lestage had engaging in protected activity, and (3) that Coloplast discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of, or as the result of, the protected activity.

Coloplast may rebut this prima facie case by producing legitimate, non-retaliatory reasons for the discharge, demotion, suspension, threat, harassment, or other discriminatory activity. Coloplast need not prove the absence of a retaliatory motive; rather, it need only raise a genuine issue of fact as to whether retaliation for the protected activity occurred. Ms. Lestage then bears the ultimate burden of proving retaliation by showing by a preponderance of the evidence that Coloplast's proffered reasons are pretextual.

**Source/Authority:**

31 U.S.C. § 3730(h); Guilfoile v. Shields, 913 F.3d 178, 187-88 (1st Cir. 2019); United States ex

rel. Karvelas v. Melrose-Wakefield Hospital, 360 F.3d 220, 235 (1st Cir. 2004) ("Karvelas II");

United States v. Pfizer, Inc., 188 F. Supp. 3d 122 (D. Mass. May 23, 2016); McKenzie v.

BellSouth Telecomm., Inc., 219 F.3d 508, 514 (6th Cir. 2000); United States ex rel. Yesudian v.

Howard University, 153 F.3d 731, 736 (D.C. Cir. 1998).

Sheppard v. 265 Essex Street Operating Company, LLC, 299 F. Supp. 3d 278, 286 (D. Mass.

2018) ("[I]f a plaintiff is able to make an initial showing of causation for the third element, the

burden will shift to the defendant to state a legitimate, nonretaliatory reason for the

termination."); Harrington v. Aggregate Industries Northeast Region, Inc., 668 F.3d 25, 28 (1st

Cir. 2012) ("As a matter of first impression, we apply a burden-shifting analysis to this FCA

retaliation claim.")

## 12.      PROTECTED ACTIVITY - DEFINED

"Protected activity" is defined as lawful acts done by an employee in furtherance of a False Claims Act action or an activity which reasonably could lead to a viable False Claims Act action. To be protected activity, the activity must relate to exposing fraud against the United States government. This includes, activities related to an employee's investigation, inquiry, testimony and other activities that concern an employer's knowing submission of, or causing to be submitted, false or fraudulent claims for payment to the government.  You are not to consider whether the litigation is successful or not. The protected activity is the filing of the *qui tam* action.

**Source/Authority:**

31 U.S.C. §3730(h); Guilfoile v. Shields, 913 F.3d 178, 188 (1st Cir. 2019); United States ex rel. Booker v. Pfizer, Inc., 847 F.3d 52, 59 (1st Cir. 2017).

### 13.     EMPLOYER'S KNOWLEDGE OF PROTECTED ACTIVITY -- DEFINED

The second element Ms. Lestage must establish is that Coloplast knew she was engaged in protected activity. I instruct you that an employer cannot possess the retaliatory intent necessary to establish a violation of the False Claims Act for retaliatory action unless the employer is aware that its employee is engaged in protected activity.

It is not necessary that Ms. Lestage affirmatively tell her employer that she is going to or has filed a lawsuit under the False Claims Act. To establish the requisite knowledge, Coloplast must possess enough information to support a reasonable conclusion it knew Ms. Lestage had reported alleged fraud to the government or had filed a lawsuit against Coloplast alleging fraud against the government.


**Source/Authority:**

United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 238-39 (1st Cir. 2004).

## 14.     ADVERSE ACTION

An employment action is adverse if the challenged action could well discourage a reasonable employee from complaining about a potential false claim.  Over the course of this trial you have heard the period of time between December 23, 2014, and January 23, 2016, referred to as an indefinite paid administrative leave, a leave of absence, a leave, and a suspension. Without regard to what the parties referred to this period of leave as, it is your job as a jury to determine whether this period of time qualified as a discharge, demotion, suspension, threat, form of harassment or any other form of discrimination as to Ms. Lestage's terms and conditions of employment.

**Source/Authority:**

Persson v. Boston University, No. 15-14037, 2019 WL 917205, at *15 (D. Mass. Feb. 25, 2019) ("Employer actions that are materially adverse are those that 'are 'harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.''") (quoting Ahern v. Shinseki, 629 F.3d 49, 55 (1st Cir. 2010)).

### 15.     RETALIATORY MOTIVE - DEFINED

The third element that Ms. Lestage must establish is that she was discharged, demoted, suspended, threatened, harassed or in any other manner discriminated against in the terms and conditions of her employment in retaliation for having engaged in protected activity. To establish this element, Ms. Lestage must prove by a preponderance of the evidence that Coloplast took adverse employment action against her <u>because</u> she engaged in protected activity.

In order to succeed on the retaliation claim, Ms. Lestage must persuade you by a preponderance of the evidence that were it not for her having engaged in protected activity, she would not have been taken out of work for a period of time <u>or</u> would have been provided with different clients and accounts upon her return to work.  Ms. Lestage is not required to produce direct evidence of an unlawful or retaliatory motive. You may infer knowledge and/or a motive as a matter of reason and common sense from the existence of other evidence.

Coloplast is a corporation and can act only through its officers and managers.  Any act or omission of an officer or manager within the scope of their employment is the action or omission of Coloplast.  An officer or manager is acting within the scope of their authority if they are engaged in the transaction of business which has been assigned to him by the employer, or if they are doing anything that may reasonably be said to have been contemplated as part of their employment.

**<u>Source / Authority:</u>**

<u>Adapted from First Circuit Pattern Jury Instruction (Employment Discrimination)</u>, 1.1; O'Malley, Grenig, and Lee's Federal Jury Practice and Instructions: Civil, (West Pub. Co. 5th ed. 2000)

## 16.    CAUSATION

Ms. Lestage has the burden to prove that she was discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of her employment because of, or as the result of, the protected activity.

Causation can be inferred from temporal proximity between protected conduct and an adverse employment action.  A one- to two-month period is sufficiently brief to allow that inference.

Evidence of a casual link between a protected activity and resulting adverse actions can be indirect or inferential. And if you find that there are circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action (i.e. plaintiff was treated differently or adversely from others after she engaged in the protected activity, or a short passage of time between that protected activity and any adverse employment action), and if you find that Coloplast failed to prove that the same employment decision would have been made even if Ms. Lestage had not engaged in protected activity, then you should find that Coloplast's actions against Ms. Lestage were, at least in part, motivated by her protected activity.

**Authority:**

Sheppard v. 265 Essex Street Operating Company, LLC, 299 F. Supp. 3d 278, 286 (D. Mass. 2018) ("Causation can be inferred from temporal proximity between protected conduct and an adverse employment action. . . . A one- to two-month period is sufficiently brief to allow that inference."); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973); Fanslow v. Chicago Mfg. Center, Inc., 384 F.3d at 485 (7th Cir. 2004); Sweeney v. Manorcare Health Services, Inc., No. C03-5320RJB, 2006 WL 1042015, at *8 (W.D. Wash. Apr.

5, 2006); <u>Wilkins v. St. Louis Hous. Auth.</u>, 198 F. Supp. 2d 1080, 1086 (E.D. Mo. 2001); <u>United States ex rel Scott v. Metropolitan Health Corp.</u>, 375 F. Supp. 2d 626, 645 (W.D. Mich. 2005); <u>United States ex rel Scott v. Metropolitan Health Corp.</u>, 375 F. Supp. 2d 626, 645 (W.D. Mich. 2005).

### 17.      CAUSATION-IN-FACT

Plaintiff need not show that the engaged in protected activity was the only or even the predominant factor that led to her leave of absence or her receipt of specific accounts upon return from the leave.  But, she must show that Defendant based its decision on her having engaged in protected conduct; and, in order for you to find for the Plaintiff, you must find that she has proved that she would not have been placed on a leave of absence or had her accounts changed upon return without having engaged in protected activity.

**Source/Authority:**

United States  ex rel. Schweizer v. Oce N. Am., 956 F. Supp. 2d 1, 12–14 (D.D.C. 2013), citing , Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, (2013) (Title VII)  and Gross v. FBL Financial Services, Inc., 557 U.S. 167 (2009) (ADEA).  See also United States ex rel. King v. Solvay S.A., No. CIV.A. H-06-2662, 2015 WL 4256402, at *8 (S.D. Tex. July 14, 2015) ("a but-for standard of causation applies"); United States ex rel. Wuestenhoefer v. Jefferson, 105 F. Supp. 3d 641, 677 (N.D. Miss. 2015); Boone v. MountainMade Found., 64 F. Supp. 3d 216, 237 (D.D.C. 2014).

## 18.     PRETEXT – DEFINED

The word pretext or pretextual means false or, that the reason offered was not the real reason for the action taken.  For instance, if an employer demotes an employee for an unlawful reason and later asserts that the decision was based on the employee's poor job performance, the employee's poor job performance may be true.  However, if it was not the real reason for the adverse employment decision, then it was a pretext asserted after the fact.

It is Ms. Lestage's burden to prove to you in the first instance that her employment was adversely affected because she engaged in protected activity.  If she establishes that she was adversely affected because of that protected conduct, the burden shifts to Coloplast to prove to you that it had a legitimate, nonretaliatory reason for removing her from work and providing her with the accounts in question when she returned.  If Coloplast demonstrates to you it had a legitimate, nonretaliatory reason for removing her from work and providing her with the accounts in question, the burden shifts back to Ms. Lestage to prove to you, if at all, that Coloplast's stated legitimate, nonretaliatory reason, was not the real reason but rather was a pretext.

**Source/Authority:**

Adapted from First Circuit Pattern Jury Instruction (Employment Discrimination), 1.1; Harrington v. Aggregate Indus. Ne. Region, Inc., 668 F.3d 25, 31 (1st Cir. 2012) (adopting McDonnell Douglas framework in FCA retaliation cases); Sheppard v. 265 Essex Street Operating Company, LLC, 299 F. Supp. 3d 278, 286 (D. Mass. 2018)  ("If the defendant articulates such a reason, the plaintiff has the additional burden of showing that the reason is mere pretext for retaliation")

## 19.    DAMAGES

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find that Ms. Lestage has proved her claim against Coloplast, then you must determine what amount of damages, if any, Ms. Lestage is entitled to recover. Ms. Lestage has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate Ms. Lestage for any harm or injury you find was caused by Coloplast. It is for you to determine what damages, if any, have been proved. Damages may not be based on speculation or sympathy. They must be based on the evidence presented at trial and only that evidence. The purpose of compensatory damages is to make Ms. Lestage whole- that is, to compensate Ms. Lestage for the damage she has suffered. Damages are not allowed as a punishment and cannot be imposed or increased to penalize Coloplast.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that Ms. Lestage prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You may award compensatory damages only for injuries that Ms. Lestage proves were proximately caused by Coloplast's allegedly wrongful conduct. Ms. Lestage must show that the harm would not have occurred without Coloplast's acts.

If you decide that Coloplast engaged in unlawful retaliation, you may award damages for any pain, suffering, inconvenience, mental anguish, or loss of enjoyment of life that Ms. Lestage experienced as a consequence of Coloplast's unlawful retaliation. No evidence of the monetary value of such intangible things as pain and suffering need be introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at trial.

I instruct you that in awarding compensatory damages, you are to award damages for the amount of wages Ms. Lestage would have earned, either in the past or in the future, if she had not been placed on the indefinite paid administrative leave and instead continued in employment with Coloplast. These elements of recovery of wages that Ms. Lestage would have received from Coloplast are called "back pay" and "loss of future earnings," and are to be awarded separately under instructions that I will soon give to you. Any amounts for "back pay" and "loss of future earnings" are to be entered separately on the verdict form. If you decide that Coloplast engaged in unlawful retaliation, you may award damages for monetary losses that Ms. Lestage may suffer in the future as a result of Coloplast's unlawful retaliation. For example, you may award damages for loss of earnings resulting from any harm to Ms. Lestage's reputation that was suffered as a result of her being placed on indefinite paid administrative leave or as a result of the accounts she received upon her return to work at Coloplast.

In assessing damages, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.

If you find that Coloplast retaliated against Ms. Lestage in violation of the False Claims Act's anti-retaliation law prohibiting such retaliation, you may award her the back pay she would have earned if Coloplast had not taken this action against her. Ms. Lestage has the burden of proving both the existence and the amount of back pay by a preponderance of the evidence. You may award as actual damages an amount that reasonably compensates Ms. Lestage for any lost wages and benefits that Ms. Lestage would have received from Coloplast had she not been retaliated against.

Back pay damages, if any, apply from the time Ms. Lestage was placed on indefinite paid administrative leave by Coloplast until the date of your verdict.

If you find that Coloplast took adverse action against Ms. Lestage in violation of the False Claims Act's anti-retaliation law prohibiting such retaliation, you may determine separately a monetary amount equal to the present value of any future diminution of earning capacity that Ms. Lestage has experienced as a result of the adverse action.  Ms. Lestage has the burden of proving these damages by a preponderance of the evidence.

## 20.     NOMINAL DAMAGES

If you return a verdict for Ms. Lestage, but find that Ms. Lestage has failed to prove actual injury and therefore is not entitled to compensatory damages, then you must award nominal damages of $1.00.  A person whose federal rights were violated is entitled to a recognition of that violation, even if she suffered no actual monetary injury. Nominal damages are designed to acknowledge the deprivation of a federal right, even where no actual injury occurred.

However, if you find actual injury, you must award compensatory damages and/or special damages (as I instructed you), rather than nominal damages.

DATED:  April 8, 2019                           Respectfully submitted,

                                                **Counsel for Plaintiff Amy
                                                Lestage**

                                                */s/ Tawny L. Alvarez*
                                                Tawny L. Alvarez (BBO No. 672255)
                                                Paul W. Shaw (BBO No. 455500)
                                                VERRILL DANA LLP
                                                One Boston Place, Suite 1600
                                                Boston, MA 02108
                                                (617) 309-2600
                                                PShaw@VerrillDana.com
                                                TAlvarez@VerrillDana.com

### CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2019, I caused a true and accurate copy of the foregoing document to be filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                        */s/ Tawny L. Alvarez*
                                        Tawny L. Alvarez

12587031_1